SAMUEL NEWELL, Surviving Executor, etc., et al., Respondents, *v.* GEORGE H. NICHOLS et al., Appellants.

One who claims through a survivorship must prove the survivorship.

There is no presumption in law of survivorship in case of persons who perish by a common disaster.

In the absence of other evidence the fact is assumed to be unascertainable, and the property rights are disposed of as if death occurred at the same time, not because of a presumption of simultaneous death, but because there is no evidence or presumption to the contrary.

The will of E. gave her residuary estate to trustees therein named, in trust, to set apart, sell, or otherwise dispose of the same at their discretion, and to invest the proceeds so as to make two funds of $15,000 each, and one of $30,000, the income of one of the funds of $15,000 to be paid to a daughter of the testatrix during her life; the principal to be paid at her death to the heirs of her body then living, in default of such heirs, to whom she may appoint by will, and in default of such appointment to the heirs of the body of the testatrix then living, and in default of such heirs to certain persons named. A similar provision was made in favor of a son of the testatrix as to the other fund of $15,000. The income of the $30,000 fund was directed to be paid to the husband of the testatrix during his life, the principal to be paid at his death to the heirs

of the body of the testatrix then living, and in default of such heirs to other persons. E. died leaving the two children named and her husband her survivors, all of whom were lost by the same shipwreck. In an action for a construction of the will, *held*, that the trust created was active and valid, and title was necessary to its execution; that title did not vest in the children, but remained in the trustees until the death of the children; that there was not an equitable conversion of real into personal estate at the death of the testatrix, the power to sell being discretionary; that the remainder over was a conditional limitation and not a condition precedent, and the intent of the will was that it should be effectual, if for any reason the children could not take; that the death of the children without issue or appointment, under the circumstances, and in the absence of evidence of survivorship, established the title of the persons to whom the remainder was limited, and entitled them to have the limitation carried into effect.

Also *held*, that assuming the presumption to be that one of the children survived the other so that a new line of descent was created as to one share, the affirmative was upon those claiming thus to be entitled to establish title to a specific share; that they could not claim to be entitled to either one or the other, and failing as to either they failed as to both; but that there was no legal presumption that there was a survivor any more than that there was a particular survivor.

(Argued September 18, 1878; decided November 12, 1878.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, affirming a judgment entered upon a decision of the court on trial at Special Term. (Reported below, 12 Hun, 604.)

This action was brought to obtain a judicial construction of the will of Elizabeth M. Walter.

The clause of the will in question is as follows:

"Fourth. I give, devise, and bequeath, to my said husband, Charles W. Walter, and my friends, Samuel Treat, of St. Louis, Missouri, and Samuel Newell, of Clifton, New Jersey, and to the survivor of them, and to their successors in this trust, all of my estate, real, personal, and mixed, not hereinbefore disposed of in fee simple, and of absolute property, in trust, however, for the following purposes, to wit: With power to the survivor or survivors of said trustees to appoint a successor or successors in place of any of them who may die during the continuance of this trust. First.

To set apart, sell, mortgage, convey, lease, or otherwise dispose of the same as by them may be deemed advisable, and to invest the proceeds thereof and reinvest said proceeds so as to make two funds of $15,000 each, and one'fund of $30,000 to be held by them in trust as aforesaid, the income of one of said funds of $15,000 to be paid by said trustees, semi-annually, to my beloved daughter, Mary R. Walter, as a memorial of her aunt Clara, during her natural life, for her sole and separate use, the principal of said fund to be paid at her death to the heirs of her body then living ; and in default of such heirs living, to whom she may appoint by her last will and testament, discharged of all further trust, and in default of said heirs of her body living at the time of her death, or of said appointment, the remainder over to the heirs of my body then living, and in default of heirs of my body living at the time of her death the remainder over to the children or heirs of Frederick A. Ridgway, of Ithaca, New York, Moses Ridgway, of West Newbury, Massachusetts, John Gunn and Henry Gunn, the last two being brothers of my mother, discharged of all further trust. And the income of the other of said funds of $15,000 to be paid by said trustees, semi-annually, to my beloved son, Joseph R. Walter, as a memorial of his aunt Clara, during his natural life, for his sole and separate use, the principal of said fund to be paid at his death to the heirs of his body then living, and in default of such heirs living, to whom he may appoint by his last will and testament, discharged of all further trust, and in default of said heirs of his body living at the time of his death or of said appointment, the remainder over to the heirs of my body then living, and in default of heirs of my body living at the time of his death, the remainder over to the children or heirs of Frederick A. Ridgway, of Ithaca, New York, Moses Ridgway, of West Newbury, Massachusetts, John Gunn and Henry Gunn, the last two being brothers of my mother, discharged of all further trust.

And the income of the said fund of $30,000 to be paid by

said trustees, semi-annually, to my beloved husband, Charles W. Walter, during his natural life, the principal of said fund to be paid at his death to the heirs of my body then living, and in default of heirs of my body living at the time of his death, the remainder over to the children or heirs of Frederick A. Ridgway, of Ithaca, New York, Moses Ridgway, of West Newbury, Massachusetts, John Gunn and Henry Gunn, the last two being brothers of my mother.

And it is my will that that portion of my estate hereby bequeathed and devised to said trustees, in trust, which shall not be by them used to create said three funds respectively : two of $15,000 each and one of $30,000, shall be held by them, in trust, for the following purposes : to sell, mort-gage, lease, convey, or otherwise dispose of the same, as by them may be deemed advisable, and to invest the proceeds thereof and re-invest such proceeds so as to make two equal funds, each of said funds to be held by them, in trust, as aforesaid ; the income of one of said funds to be paid to my beloved daughter, Mary R. Walter, during her natural life, and the principal of said fund to be paid at her death to the heirs of her body then living ; and in default of such heirs of her body living at the time at her death, then the income of said fund to be equally divided between my other chil-dren during the life of my said son, Joseph R. Walter, and at his death the principal to be paid to the heirs of my body then living, and in default of heirs of my body then living, to the children or heirs of Frederick A. Ridgway, of Ithaca, New York, Moses Ridgway, of West Newbury, Massachu-setts, John Gunn and Henry Gunn — the last two being brothers of my mother ; and the income of the other of said funds to be paid to my beloved son, Joseph R. Walter, during his natural life, and the principal of said fund to be paid at his death to the heirs of his body then living ; and in default of such heirs of his body living at the time of his death, then the income of said fund to be equally divided between my other children during the life of my said daughter, Mary R. Walter, and at her death the principal to be paid

to the heirs of my body then living; and in default of heirs of my body then living, to the children or heirs of Frederick A. Ridgway, of Ithaca, New York, Moses Ridgway, of West Newbury, Massachusetts, John Gunn and Henry Gunn — the last two being brothers of my mother.

It is my will that my friend, Mrs. Louisa Bartlett, wife of Edmund Bartlett, of Newburyport, Massachusetts, shall have $3,000 out of that part of my estate which, by the foregoing provisions of my will would, in the event of a failure of issue of my body go to my collateral relatives, the Ridgways and Gunns above named; therefore my will is, that before any distribution of my estate shall be made among said collateral relatives as provided above in my will, my trustees shall pay to said Louisa Bartlett the said sum of $3,000, out of my estate, before distributing the same, or any part thereof, to said collateral relatives or any of them; and that only the balance of my estate, after deducting said $3,000, paid to said Louisa Bartlett, be divided to said collateral relatives in the manner and upon the conditions hereinbefore provided."

The testatrix died on October 7, 1870. She left her surviving her husband and the two children, Mary R. and Joseph R. Walter named in the will, both infants. Mary Ridgway, the mother of the testatrix, also survived her. The mother, husband and two children were passengers on the steamship "Schiller," which sailed from the city of New York, on a voyage to Europe, on or about the 27th day of April, 1875. The ship sunk and was lost on or about the 7th day of May, 1875, near the Scilly Islands, England, and all the persons above named were lost in the catastrophe. The mother was about sixty-nine years of age; the husband forty-five. The daughter, Mary R., was about ten years, and the son, Joseph R., about seven years of age. There was no evidence that there was any survivorship among the four persons named.

The estate of the testatrix at the time of her death consisted of personal estate, and an interest in real and personal estate under the will of her father, which had not then been

conveyed or set apart to her. Subsequently there was conveyed to the trustees named in her will the title to certain real estate, and also certain personal property. The said trustees pursuant to the terms of the trust, sold a small portion of the real estate, the greater portion thereof, however, remained unsold. The estate was not fully adequate to create the trust fund of $60,000 contemplated by the will.

*Geo. C. Genet,* for appellants. The direction in the will to sell the real estate for a division between the children of the testatrix being positive, it is to be regarded as personal estate, to be disposed of according to the laws of this State, the domicile of the testatrix, without regard to its location. (*Phelps* v. *Pond,* 23 N. Y., 69; *Makings* v. *Cromwell,* 1 Seld., 136; *Hosford* v. *Nichols,* 1 Paige, 226; *Nicholson* v. *Leavitt,* 4 Sand., 276; *Andrews* v. *Harriott,* 4 Cow., 508, 527, note; *Hatch* v. *Bassett,* 52 N. Y., 361; *Cutler* v. *Davenport,* 1 Pick., 81; *Holmes* v. *Remsen,* 4 J. Ch., 462; Story's Conflict of Laws, §§ 424, 428, 445.) Upon the death of the testatrix the whole estate at once vested in her children subject only to the execution of the trusts or powers contained in the will. (*White* v. *Howard,* 52 Barb., 294; 46 N. Y., 144; *Boynton* v. *Hoyt,* 1 Den., 57; *Lang* v. *Ropke,* 5 Sand., 363; 2 R. S., 729, §§ 56, 58; 1 id., 729, 730, §§ 60–62; 2 Washb. on R. P., 262, § 4; *Lefevre* v. *Lefevre,* 59 N. Y., 446; *Quinn* v. *Hardenbrook,* 54 id., 86; *Doe* v. *Ding,* 2 M. & S., 445; *Van Kleek* v. *Dutch Church,* 20 Wend., 457–471; *Breenor* v. *Meigs,* 64 N. Y., 516; *Manice* v. *Manice,* 43 id., 368; *Skinner* v. *Quinn,* id., 99.) The trust estate terminated at the death of each beneficiary. (1 R. S., 730, § 67; *Harris* v. *Clark,* 3 Seld., 259; *Savage* v. *Burnham,* 17 N. Y., 574; *Everett* v. *Everett,* 29 id., 71; *De Barrante* v. *Gott,* 6 Barb., 493; 1 R. S., 729, § 55, sub. 3; id., 730, § 67.) It was incumbent upon the claimants to show their title by proof that all the contingencies have happened which were a condition precedent to their right. (*Wing* v. *Augrave,* 8 H. of L., 183; *Underwood* v. *Wing,* 4 De Gex, M. & G., 661; *In*

*re Green's Settlement*, 1 L. R. Eq., 288; *Taylor* v. *Diplock*, 2 Phillimore, 261; *Burnett* v. *Tugwell*, 31 Beav., 232; *Boughton* v. *Randall*, Cro. Eliz., 503; *Calvin* v. *Kings*, Proc., 1 Hagg. E. R., 92; *Scheyer's Case*, Proc., id., 748; *Mocking* v. *Mitchell*, 1 Barb. Ch., 264; *Coye* v. *Leach*, 8 Metc. [Mass.], 371.)

*William Fullerton*, for respondents Samuel Newell, executor, etc., and others. No survivorship will be presumed in this case. (*Coyle* v. *Leach*, 8 Metc., 371; *Moering* v. *Mitchell*, 1 Barb., 264; *Smith* v. *Croom*, 7 Fla., 81; *Underwood* v. *Wing,* 31 Eng. L. & Eq., 293.) As no survivorship will be presumed, and as none was proved, the whole residuary estate goes to the persons described in the will as the children of Frederick A. and Moses Ridgway and John and Henry Gunn. (*Du Bois* v. *Roy*, 36 N. Y., 162; *Bates* v. *Hillman*, 43 Barb., 645; *Taggart* v. *Murray*, 53 N. Y., 233; *Dagget* v. *Slack*, 8 Metc., 450; *Holbrook* v. *Harrington*, 16 Gray, 102; *Bassett* v. *Granger*, 100 Mass., 348; *Jameson* v. *Hoy*, 86 Mo., 546; *Quinn* v. *Hardenbrook*, 54 N. Y., 83.) There being no direction to sell it was optional for the executors and trustees to sell or not in the exercise of their discretion, and hence there was no equitable conversion of the realty. (*Harris* v. *Clark*, 7 N. Y., 242; *White* v. *Howard*, 46 id., 144; *Knox* v. *Jones*, 47 id., 389.) By the provisions of the will the whole estate, both real and personal, of the testatrix vested in her executors and trustees in trust. (*White* v. *Howard*, 46 N. Y., 144; 2 R. S., § 73, p. 1109; *Vernon* v. *Vernon*, 53 N. Y., 351.)

*Henry Arden*, for children of Moses Ridgway and others, respondents. Where by a will property is given to certain persons, on the failure of a prior gift in a particular manner, and the will shows it was the testator's clear and certain intention that such persons should take on failure of the prior gift, although it should fail in a manner different from that specified, such devisee or legatees will take. (*Norris* v.

*Beyea*, 13 N. Y., 287; *Warren* v. *Rudall*, 4 Kay & Johnson, 603; *Jones* v. *Westcombe*, 2 Eq. Abr., 245; *Statham* v. *Bell*, Cowp., 40; Dougl., 65; *Avelyn* v. *Ward*, 1 Vesey, 420; *Gordon* v. *Adolphus*, 6 Bro. Parl. Ca., 354; *Hillersdon* v. *Lowe*, 2 Hare, 355; *Bradford* v. *Foley*, Dougl., 63; *Jeffreys* v. *Reynolds*, 6 Bro. Parl. Ca., 260; 2 Fearne on Rem., 392.)

*B. Roelker*, for heirs of John Gunn and Henry Gunn, respondents. No survivorship will be presumed in this case. (2 Best's Law of Evi., 187; id. [1st. Am. ed. by Wood], 724–727, § 410; 1 Taylor's Evi. [London, 1873], 201, § 159; 1 Greenl. Evi. [13th ed.], 38, § 30, note 2; *Coye* v. *Leach*, 8 Metc., 371; *Smith* v. *Croom*, 7 Fla., 81–180; *Pell* v. *Bell*, 1 Cheves. [Eq.], 99; *Moehring* v. *Mitchell*, 1 Barb. Ch., 264; *Taylor* v. *Diplock*, 2 Phil. Ec. R., 261; 3 Hagg. Ec. R., 748; *Wright* v. *Netherwood*, [Evans' ed. of Salked], 593, notes; *Mason* v. *Mason*, 1 Meriv., 308; *In re Murray*, 1 Curtis, 596; *Saterthwaite* v. *Powell*, Ch., 705; *Underwood* v. *Wing*, 19 Beav., 459; 31 L. & Eq., 293; 4 DeG., MacN. & G., 633; *In re Lewis*, 40 L. J. Ch., 602; 11 L. R. Eq., 236; *In re Pherre's Trust*, 5 L. R. Ch. App., 139; L. J. R. [N. S.], Ch., 316.) The burden of proof rests on the party to whom the survivorship would have been beneficial. (*Pell* v. *Ball*, 1 Cheves, 99.) The devise to the heirs of the Ridgways and Gunns was a contingent and executory or conditional limitation which took effect when the precedent limitation failed. (1 R. S., 725, § 27; *Buckworth* v. *Thirkell*, 3 Bosq. & Pull., 625; *Norris* v. *Beyea*, 13 N. Y., 287; *Avelyn* v. *Ward*, 1 Ves., 419; *Warren* v. *Rudal*, 4 Kay & John., 603; *Jones* v. *Westcomb*, Prec. Ch., 316; *Foster* v. *Cook*, 3 Brown Ch., 286; *Murray* v. *Jones*, 2 Ves. & B., 313; *Pearsall* v. *Simpson*, 15 Ves., 29.) The provisions of the will created an equitable conversion of the real estate into personal estate from the time of the death of the testatrix. (*Stagg* v. *Jackson*, 1 N. Y., 206; *Graham* v. *Livingston*, 14 Hun, 11; *Kinnie* v. *Rogers*, 42 N. Y., 531; *Skinner* v. *Quinn*, 43 Id., 100; *Crittenden* v. *Fairchild*, 21 id., 289; *Dodge* v. *Pool*,

23 id., 69; *Ashley* v. *Palmer*, 1 Hoffman, 219; 1 Jarman on Wills, 528; 2 Story Eq., §§ 791–793, §§ 212–214; *Genet* v. *Beekman*, 26 N. Y., 41; *Gilman* v. *Reddington*, 24 id., 12; *Manice* v. *Manice*, 43 id., 380; *Brown* v. *Harris*, 25 Barb., 134; *Amorg* v. *Lord*, 5 Seld., 403; *Knox* v. *Jones*, 47 N. Y., 396.) The heirs of the Ridgways and Gunns took *per stirpes* and not *per capita*. (2 Kent., 425; *Bool* v. *Mix*, 17 Wend., 119; *Walker* v. *Griffin*, 11 Wheat., 375; Tissel's Appeal, 17 Penn., 55; *Lowe* v. *Carter*, 2 Jones Eq. [F. C.], 377; *Bassett* v. *Granger*, 100 Mass., 348; *Holbrook* v. *Harrington*, 16 Gray, 102; *Balcolm* v. *Hoynes*, 14 Allen, 205; *Daggett* v. *Slack*, 8 Metc., 450.)

*Geo. C. Blanke*, for guardian *ad litem* of infant children of Frederick A. Ridgway, respondents. The burden of proving a survivorship rested upon the appellants. (1 Whart. Evi., § 353.)

Church, Ch. J. The able and elaborate opinion delivered by Judge Van Vorst, who tried the case at Special Term, renders it unnecessary to elaborate the questions involved. I have examined with care all the points presented, and I concur fully with the opinion upon all of them, and with the views expressed therein.

The principal points decided are : 1st. That the appellants who claim through a survivorship must prove the survivorship. 2d. That there is no presumption in law of survivorship in the case of persons who perish by a common disaster, as in this case, by shipwreck, without other evidence tending to prove the fact, and hence that the party upon whom the *onus* lies fails to establish it. 3d. That the property never vested in the children, but the title remained in the trustees until the death of the children, that the trust was an active one and valid, and title was necessary to its execution. 4th. That there was not an equitable conversion from real to personal estate at the death of the testatrix, the power to sell being discretionary. 5th. That the remainder over was

a conditional limitation, and not a condition precedent, and that the intent of the will was that it should be effectual if for any reason the children could not take. 6th. That the death of the children without issue or appointment, under the circumstances developed without evidence of survivorship, establishes the title of the persons to whom the remainder is limited, and entitles them to have the limitation carried into effect.

I should be content to adopt the opinion without further remark but for considerations which have suggested themselves to some of my brethren in respect to the question of survivorship, as applicable to the position of the appellants, which will be briefly noticed. The suggestion, as I understand it, is, that conceding the burden of proving survivorship to be upon the appellants, and that in this case there is no presumption that either particular child survived, yet as the law will not presume that they died at the same time, a presumption may be indulged that there was *a* survivor, and that it makes no difference which child survived as he would inherit the share of the other, and create a new line of descent for that share which would embrace the appellants. This of course would affect but one of the children's share, or one-quarter of the estate. The suggestion although apparently plausible in statement, cannot be sustained.

In the first place assuming such a presumption, it may be observed that the appellants are required to prove their right or title. Can a party successfully claim that as he is entitled to one thing or another, and as they are alike he will take either ? It is an accidental circumstance that the shares of these children were alike in amount or kind. Suppose they had been unequal in amount, or that one had been in land, and the other in money, could the appellants have claimed either ? Clearly not. As to the daughter's share there was a failure to prove a title because it does not appear that the son survived the daughter, and the same is true of the share of the son. The appellants hold the affirmative, and must establish their title to some specific share or interest

which they fail to do by an alternative claim. As they cannot claim either have they not failed as to both? A somewhat similar point, though upon a different ground was presented in *Wing* v. *Angram* (8 H. L., 183). The estate was limited to one Wing upon certain conditions in the respective wills of husband and wife, who were lost at sea. The husband gave everything to the wife, and adds: "And in case my wife shall die in my lifetime   *   *   * then I give all my estate to William Wing." And the wife gave everything to the husband, and stated, "and in case my husband should die in my lifetime, then I devise, bequeath, and appoint the said property to the use of William Wing." Wing claimed under both wills, but the court denied his claim under either, because he could not prove that either husband or wife survived. It is true in that case that the wills created a condition precedent, but as the condition was the same in each will the ultimate legatee claimed under both on the ground that it was immaterial which survived. Lord CHELMSFORD, in answering this point said: "If different persons had been entitled under the two wills, each must have established his claim solely by the will in his favor, independently of the other, and no difference can be made in the rules of evidence, because the appellant accidentally happened to be the ultimate legatee in each will." The claim was not predicated upon the presumption of a survivor as here, but upon a unity of rights and interests, as legatee under both wills.

I do not think an alternative claim can be sustained, conceding the presumption of survivorship. However this may be, a decisive answer to the suggestion is, that there is no legal presumption which courts are authorized to act upon that there was *a* survivor any more than that there was a particular survivor. It is not claimed that there is any legal presumption that the children died at the same time. Indeed it may be conceded that it is unlikely that they ceased to breathe at precisely the same instant, and as a physical fact it may perhaps be inferred that they did not. But this does

not come up to the standard of proof. The rule is that the
law will indulge in no presumption on the subject. It will
not raise a presumption by balancing probabilities, either
that there was a survivor, or who it was. In this respect
the common law differs from the civil law. Under the latter,
certain rules prevail in respect to age, sex, and physical con-
dition, by which survivorship may be determined, but nothing
can be more uncertain, or unsatisfactory than this conjectural
mode of arriving at a fact, which from its nature must
remain uncertain, and often upon the existence of which the
title to large amounts of property depend. In the language
of the Lord Chancellor, in *Wing* v. *Underwood* (4 DeGex,
M. & G., 633), " We may guess, or imagine, or fancy, but
the law of England requires evidence." There are cases
where a strong probability in theory at least would arise,
that one person survived another, and perhaps as strong as
that that there was *a* survivor, and yet the common law wisely
refrains from acting upon it in either case. It is regarded
as a question of fact to be proved, and evidence merely that
two persons perished by such a disaster, is not deemed suffi-
cient. If there are other circumstances shown, tending to prove
survivorship, courts will then look at the whole case for the
purpose of determining the question, but if only the fact of
death by a common disaster appears they will not undertake
to solve it on account of the nature of the question, and its
inherent uncertainty. It is not impossible for two persons
to die at the same time, and when exposed to the same peril
under like circumstances, it is not as a question of proba-
bility very unlikely to happen. At most the difference can
only be a few brief seconds. The scene passes at once
beyond the vision of human penetration, and it is as unbe-
coming as it is idle for judicial tribunals to speculate or
guess whether during the momentary life struggle one or
the other may not have ceased to gasp first, especially when
the transmission of title to property depends upon it, and
hence in the absence of other evidence the fact is assumed
to be unascertainable, and property rights are disposed of as

if death occurred at the same time. This is done not because the fact is proved, or that there is any presumption to that effect, but because there is no evidence, and no presumption to the contrary. The authorities are uniform upon this doctrine, but the expressions of some of the judges in announcing it are liable to be misunderstood as indicating a presumption of simultaneous death which is not the rule. For instance, Sir WILLIAM WYNNE said : " I always thought it the most natural presumption that all died together, and that none could transmit rights of property to another." (*Rex* v. *Heass*, 2 Salk., 593; 2 Phill., 296, note *c*. ; 5 B. & Ad., 91, 92.)

Sir JOHN NICOLL said : " I assume that both perished in the same moment. (*Taylor* v. *Diplock*, 2 Phill., 261.) *In the Matter of Selwyn* (3 Hagg. Ec. R., 748), the court said : " But in the absence of clear evidence, it has generally been taken that both died in the same moment." Sir HERBERT JENNER said : " The parties must be presumed to have died at the same time." (1 Curties, 705.)

These expressions only mean that as the fact is incapable of proof, the one upon whom the *onus* lies fails, and persons thus perishing must be deemed to have died at the same time, for the purpose of disposing of their property. The Lord Chancellor in *Wing* v. *Underwood* (*supra*), recognized the distinction, and explained the meaning of the rule. In commenting upon a similar expression of the Master of the Rolls to the effect that he must assume that Mr. and Mrs. Underwood both died together, the chancellor said : " From personal communication with his honor, I know that he is not aware that he ever used such an expression, and all he ever meant to say was that the property must be distributed just as it would have been if they had both died at the same moment." And Mr. Best in his work on Presumptions, after laying down the general rule, states, that it is not correct to infer from this that the law presumes both to have perished at the same moment, and adds : " The practical consequence is however nearly the same, because if it cannot be shown

which died first, the fact will be treated by the tribunal as a thing unascertainable, so that for all that appears to the contrary, both individuals may have died at the same moment."

All the common law authorities are substantially the same way, and the rule, which I think is wise and safe, should be regarded as settled. Its propriety is not weakened by the circumstance that its first application in this court prevents this estate from being turned into channels never contemplated or intended by the testatrix.

The judgment must be affirmed.

All concur, except MILLER and EARL, JJ., absent at argument.

RAPALLO, J., concurs in all except as to survivorship between the two children, and as to that does not vote.

Judgment affirmed.