FRANK ROBEL, Administrator, *vs.* CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.

## March 12, 1886.

**Negligence—Evidence held sufficient to go to the Jury.**—A servant of the defendant had been three or four days engaged as a brakeman and as one of a station yard crew, he being previously a stranger to the locality. While descending from a moving freight car by a side ladder, he was swept off by a trestle standing 14½ inches from the side of the car, and killed.   Case considered sufficient to go to the jury upon the questions (1) of defendant's negligence; (2) as to whether the servant knew this danger, or was chargeable with want of ordinary prudence if he had failed to inform himself of it, so that he should be deemed to have assumed the risk; and (3) as to his contributory negligence.

**Action for Injuries Causing Death—Measure of Damages.**—In a statutory action to recover for death caused by negligence, when the next of kin, for whose benefit the action is prosecuted, were so related to the deceased as to be entitled to his services, or to support from him, (*e. g.*, the father of a minor son,) the law presumes some loss.   It appearing that the deceased was a man engaged in active employment, presumably remunerative, and that he was nine months less than twenty-one years of age, a recovery might be had, in behalf of the father, of more than merely nominal damages.

Appeal by plaintiff from an order of the district court for Dakota county, *Crosby*, J., presiding, refusing a new trial.

*Gore & Fletcher,* for appellant.

*W. H. Norris,* for respondent.

DICKINSON, J.[1]     Action under the statute to recover damages for alleged negligence resulting in the death of the plaintiff's intestate. At the trial, and upon the evidence presented on the part of the plaintiff, the court directed a nonsuit, upon the ground that the deceased was chargeable with contributory negligence.     The following facts were shown by the evidence :     The accident occurred in the day-time, upon a side track of the railroad, at Hastings.     This track, running east and west, at the place of the injury runs under or through a trestle-work structure, extending from the river south, across this track, to a grain elevator standing a considerable distance from it. This trestle-work supported a rail or tram-way, which was used for transporting grain, by means of cars, from the elevator to the railroad track, to be there transferred to the railroad cars, and also, perhaps, to transport grain to the river.     The trestle-work was of about the height of the top of a box freight car.     To enable cars to pass through without obstruction, a section of the tram-way over the track was hinged on one side, so that it might be swung into an upright position.     When in that position, it would be about 18 feet high. The horizontal distance between the trestle and a box car passing through it is 14½ inches.     Fifteen feet east of the trestle, the track runs under the approach to a bridge which crosses the river.     The perpendicular space between the top of a box car and this bridge structure is four and a half feet.     The track descends as it approaches the bridge from a point some distance west of this locality, and comes to an end east of the bridge.     The deceased had been engaged in the defendant's employment at this place three or four days at the time of the accident, as a brakeman, and as one of a yard crew at Hastings, under direction of one Bostwick, the yard-master; and, so far as appears, had not previously been acquainted with the locality. During each of the two or three days before the accident, he had been down over this side track, and, as may be assumed, through and beyond this trestle, engaged as one of the yard crew in connection with

---

[1] Mitchell, J., took no part in this case.

the moving of cars. At the time of the accident, two box cars were to be sent from the west, eastward beyond the bridge, where they were to be left. The cars, detached from the locomotive, were running down towards the bridge at a speed of from four to six miles an hour, the deceased being on the top as brakeman. Before reaching the trestle, he had set the brake on the forward car, and was standing on the car, with his back in the direction in which the cars were moving, looking to the westward, where Bostwick was in sight, standing upon the locomotive. Bostwick motioned to him for the purpose of cautioning him to stoop down so as to avoid striking the bridge. The evidence tends to show that the deceased turned his head as though looking towards the bridge. He then attempted to descend to the ground by means of the ladder on the side of the car, and, as he was doing so, he was struck by the trestle, was swept off, run over, and killed.

There was presented a case proper for the determination of the the jury, as to whether the defendant was chargeable with negligence in permitting the trestle to stand so near to its track. *Clark* v. *St. Paul & S. C. R. Co.*, 28 Minn. 128, (9 N. W. Rep. 581;) *Kearns* v. *Chicago, M. & St. P. Ry. Co.*, 66 Iowa, 599, (24 N. W. Rep. 231;) *Dorsey* v. *Phillips, etc., Const. Co.*, 42 Wis. 583; *Chicago & Iowa R. Co.* v. *Russell*, 91 Ill. 298.

The point most relied upon in support of the nonsuit is that, although there was negligence in suffering the trestle to be so near to the track, yet the deceased must be deemed to have assumed the risk, and to have waived all right to recover for injuries caused thereby. The conditions necessary to sustain this proposition are that Robel knew, or was chargeable with want of ordinary prudence if he did not know, not only of the existence of the trestle, but that it stood so near to the passing cars as to occasion the danger which he encountered,—*Russell* v. *Minn. & St. L. Ry. Co.*, 32 Minn. 230, (20 N. W. Rep. 147;) *Cook* v. *St. Paul, M. & M. Ry. Co.*, 34 Minn. 45, (24 N. W. Rep. 311;) *Dorsey* v. *Phillips, etc., Const. Co.*, 42 Wis. 583; *Mayes* v. *Chicago, R. I. & P. Ry. Co.*, 63 Iowa, 562, (14 N. W. Rep. 340, and 19 N. W. Rep. 680;) *Chicago & Iowa R. Co.* v. *Russell*, 91 Ill. 298,—and to justify a nonsuit upon this ground it

must so clearly appear that such was the case that the jury would not have been warranted in considering that the evidence failed to establish such conclusions.

In our judgment, the case does not come up to these requirements. It is not shown how many times in the course of the two or three days preceding the accident Robel was called into the vicinity of or past the trestle. At most, it was not many times. How he may have been engaged on these occasions, how far his attention may have been necessarily directed to other things, and what opportunities he had for observing the proximity of the trestle to the cars, is not shown. It may be assumed that he must have seen so conspicuous an object as the trestle. But that might be, and yet he not have known the danger, or have had such reason to apprehend danger that he is to be conclusively presumed negligent in not having informed himself of it. Until the servant should have some reason to apprehend the existence of this danger not ordinarily incident to his employment, his conduct might be in some degree influenced by the assumption that the employer had regard to its duty, and would not negligently expose the servant to extraordinary peril. The same degree of watchfulness would not be demanded of him to inform himself concerning possible extraordinary dangers as would be required in respect to such perils as were ordinarily incident to such service. See cases above cited. In these first few days of Robel's employment, it is reasonable to consider that many things would naturally demand his attention concerning his duties and the locality in which he was placed, and that, under ordinary circumstances, there may not have been obvious reason to apprehend danger from this trestle. Doubtless, if, while a car was standing in the passage-way through the trestle, or passing through it, his employment and his position were such as to enable him to observe the situation, the dangerous proximity of the trestle to the car would be quite apparent; but under other circumstances, and merely from observation of the space through which cars were to pass, — a little over 12 feet wide, — whether the insufficiency of this passage-way would be so obvious as to excite attention is more doubtful. That would perhaps depend upon the accuracy of the observer in estimating distances, and, of

course, upon his employment and mental occupation at the time. However this might be determined as a question of fact, we think that, from the circumstances shown by the evidence, it should not be conclusively inferred, and as a legal conclusion, that the deceased knew of this danger, or, in the exercise of ordinary prudence, would have known it.

The cases above cited sustain this conclusion. See, also, *Illinois Cent. R. Co.* v. *Welch*, 52 Ill. 183. The case of *Clark* v. *St. Paul & S. C. R. Co.*, 28 Minn. 128, (9 N. W. Rep. 581,) cited by the respondent as decisive of this case, was different, in the essential particular that there was no doubt that Clark knew and appreciated the danger, with which he had long been familiar. He was only forgetful of it at the instant of the accident.

It is further urged, in support of the nonsuit, that Robel was obviously guilty of contributory negligence in other respects than those above considered. What we have already said is, in part, applicable to this feature of the case. There was evidence tending to show that the deceased was not required by his duties to remain on the car until it stopped, but that he might leave it with the brake set. We need not consider whether the deceased was chargeable with negligence, as respects the danger from the bridge under which the cars were to pass, in riding towards the bridge while standing facing in the opposite direction; nor whether such conduct was in any degree justified by his attention to the signals of the foreman. To affect the case the negligence of the deceased must have relation to the injury actually suffered. He was not injured by the bridge. To the injury suffered, not from what was *over* the track, but from the structure *beside* the track, his riding backward upon the top of the car was not so intimately connected in the relation of cause and effect that, as a matter of law, it bars a recovery. Neither was it for the court to determine that, in going over the side of the car, the deceased ought to have seen this obstruction. That, too, was for the jury. *Illinois Cent. R. Co.* v. *Welch, supra; Chicago & Iowa R. Co.* v. *Russell, supra; Dorsey* v. *Phillips, etc., Const. Co., supra.*

The further point is made that upon such evidence there could have been no recovery of substantial damages, because there was no

proof that the life of the deceased, if continued, would have been of any pecuniary benefit to those in whose behalf the action is maintainable. It appears that the deceased was of the age of twenty years and three months. His parents were living in Germany. He had also brothers and a sister. The value to the surviving beneficiaries, under the statute, of the life of the deceased,—the loss resulting to them from his death,—constitutes the ground and the measure of the recovery. *Shaber* v. *St. Paul, M. & M. Ry. Co.*, 28 Minn. 103, (9 N. W. Rep. 575 ;) *Schwarz* v. *Judd*, 28 Minn. 371, (10 N. W. Rep. 208 ;) *Scheffler* v. *Minn. & St. L. Ry. Co.*, 32 Minn. 518, (21 N. W. Rep. 711.) Obviously and necessarily the amount of such damages must, in any case, be to a great extent conjectural, and much must be left to the judgment of the jury; but the statute contemplates an assessment of damages, and not a merely arbitrary award. Such assessment must be based upon the reasonable expectation of benefit to the surviving next of kin from the life of the deceased. Where such beneficiaries were so related to him that they would not have been legally entitled to support, service, or contribution from him, it may be accepted as the law that no substantial recovery can be had without proof of such facts and circumstances as render it probable that actual and substantial benefit would have accrued to them from his continued life. However that may be, the case is not the same where the relation is such that the next to kin would have been of right entitled to the service of the deceased, or to support from him. Even in such a case, the measure of recovery would of course be affected by proof, or by the absence of it, of facts going to show the value of the life in question, and that the survivors would have derived substantial advantage from that life if it had continued. But, even without such proof, the law, in ordinary cases, presumes the life and employment to be of some pecuniary value to those who are entitled to receive the benefits of it. *City of Chicago* v. *Scholten*, 75 Ill. 468; *City of Chicago* v. *Hesing*, 83 Ill. 204; *Scheffler* v. *Minn. & St. L. Ry. Co., supra.* Although the evidence in this case was exceedingly meagre, yet, in view of the facts that the father of Robel would have been entitled to the fruits of his labor for a period of nine months subsequent to the time of his death, and that Robel was actually en-

gaged in an active employment, presumably yielding compensation, we think that a recovery might have been had of more than a merely nominal amount.

Our conclusion upon the whole case is that the nonsuit was improperly granted, and the order refusing a new trial is reversed.