ALBERT YOUNGQUIST .v. MINNEAPOLIS STREET RAILWAY COM-
PANY.[1]

December 13, 1907.

Nos. 15,336—(115).

**Street Railway—Control of Car.**

The evidence sustains a finding of the jury that proper signals were not given, and that appellant's repair car was not under proper control as it approached the street which respondent was crossing.

**Contributory Negligence.**

The evidence does not conclusively show that respondent's intestate, while riding a bicycle, was guilty of contributory negligence in attempting to cross the street car tracks ahead of the car.

**Interest of Beneficiary.**

Where the relation existing between the beneficiary as next of kin to the deceased is such that the beneficiary would have been of right entitled to support from him, the law presumes the life and employment to be of some pecuniary value, and the presumption is not conclusively overcome by the fact that decedent was a young man seventeen years old, was self-supporting and lived away from home, and that the father resided in another state and had demanded no pecuniary assistance from him for the period of three years. Under the circumstances, the jury were warranted in returning a verdict of $1,000.

**Remarks of Counsel—Appeal.**

An application for a new trial upon the ground that remarks of counsel during argument to the jury were prejudicial cannot be reviewed upon appeal, unless incorporated in a settled case or bill of exceptions.

Action by the administrator of the estate of Fred Krause, deceased, in the district court for Hennepin county to recover $5,000 for the death of plaintiff's intestate. The case was tried before John Day Smith, J., and a jury which returned a verdict in favor of plaintiff for $1,000. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Jno. W. Arctander* and *Munn & Thygeson,* for appellant.
*David R. Thomas,* for respondent.

[1] Reported in 114 N. W. 259.

LEWIS, J.

Respondent's intestate, Fred Krause, was injured while riding a bicycle at the intersection of Seventh avenue and Fourth street in the city of Minneapolis, by colliding with a repair car which was being operated on appellant's tracks. A verdict of $1,000 was recovered. It is claimed in this court that it conclusively appears from the evidence that appellant was not negligent in the operation of its car and that the decedent was guilty of contributory negligence.

1. The accident was witnessed by eight or nine different people, occupying different points of view. Some of them were looking out of windows in adjacent houses, others were sitting on the sidewalks, and others were passing along the street. Four or five witnesses called on behalf of respondent testified that the young man was riding his wheel at moderate speed on the bicycle path at the side of the sidewalk down the westerly side of Seventh avenue towards Fourth street; that he rode straight ahead, as if intending to cross the street, and as he approached the street car tracks the car came close upon him from the west, and he made a sudden turn to the right and fell from his wheel within three or four feet from the westerly side of Seventh avenue. Some of these witnesses insisted that the car struck him, but were uncertain whether it was the fender or some other part of the car. Others stated they could not say that they saw the car strike him, but all agreed that he swerved a little to the right, as though he had suddenly discovered the presence of the car and was endeavoring to get out of its way, when he fell and rolled under the fender. Some of the witnesses called by appellant testified that the young man had turned down Fourth street, a little ahead of the car, and that he did not come in contact with it until he had reached the middle of Seventh avenue, and that he fell from his bicycle before he was run over. One witness claimed that he fell just in front of the car at a point about two-thirds of the way across Seventh avenue, and that the car did not run more than three or four feet thereafter, and stopped close to the easterly side of the avenue. Several witnesses produced by respondent stated that they noticed the car coming, but did not hear any gong or signal of warning until about the time the car reached Seventh avenue. The operators of the car testified that the gong was

sounded at least one hundred feet west of Seventh avenue, and was kept ringing continuously until the accident happened.

Some of respondent's witnesses stated that the car was going at a rapid rate of speed as it rounded the curve at Eighth avenue, the next street westerly, rapidly approached Seventh avenue, and did not slacken until it reached the avenue. The men in charge of the car stated that they were running at the rate of about twelve miles an hour until within one hundred feet of the avenue, when they slowed down to seven or eight miles an hour, and that when the collision took place, about the middle of Seventh avenue, they were running about four or five miles an hour. The car was what is known as a "wire car," used for repairing purposes. It was not furnished with an air brake, and the only means of stopping it in case of an emergency was a hand brake. It was used for the purpose of making repairs at any point along appellant's system in Minneapolis, and was not required to stop at streets, or the usual street car stopping places.

As the young man on the wheel approached Fourth street he had a clear vision to his left for at least a distance of thirty or forty feet, and, had he looked, would have seen the approaching car. But the operators of the car also had an unobstructed view of the bicycle rider, and under such circumstances the duty devolved upon them to have the car under control. Under the familiar rule applicable in such cases, the rights of both parties were equal. Each had the right to use the street, but only with due regard to the equal right of the other. The evidence is not conclusive that the young man was attempting to ride ahead and around the car, and the testimony produced on the part of respondent was not necessarily untrue, viz.: That he made no such attempt, but was going straight ahead in line with the bicycle path, and did not discover the proximity of the car until it was close upon him and too late to get out of its way, but that he made an effort to do so by making a sudden turn to the right. It does not follow that he was guilty of contributory negligence, because he must have seen the car, had he looked. Assuming that he did see it, yet if it were traveling at a far greater speed than he had reason to suppose, and if the warning signals were not given, it was a question for the jury to determine whether or not he was guilty of contributory negligence in assuming to go ahead.

2. The mother of the deceased died when he was one and one half years old, and his father had remarried. For about three years prior to his death young Krause had not lived with his father, although he occasionally visited him. During that time the father had contributed nothing towards the support of the son, and the son had done nothing towards the maintenance of the father. Upon this evidence, appellant contends that respondent can in no event recover more than nominal damages. The argument is based upon the proposition that the evidence as to the expectancy of the beneficiary was insufficient, and, not having personally appeared to the jury, that there was nothing from which they were at liberty to infer what his expectancy was. It was further urged that the jury were not entitled to take into consideration the wages of the young man during the remainder of his minority, for the reason that it conclusively appeared he had been emancipated by the father. The court instructed the jury that the damages, if any, must be solely by way of compensation for pecuniary loss— that is, the probable pecuniary interest of the next of kin in the continuance of the life of decedent; that no precise rule could be laid down as to the amount of damages, which was a question that must be left to the judgment of the jury upon the entire evidence in the case.

It is unnecessary to consider what other jurisdictions may have determined with reference to this question. Our statute, which permits this class of actions to be maintained, was construed in Robel v. Chicago, M. & St. P. Ry. Co., 35 Minn. 84, 27 N. W. 305, where the same objection was made. In that case the deceased was twenty years old, his parents resided in Germany, and he had brothers and sisters. Here decedent was seventeen years of age, his parents resided in another state, and he had two sisters—one in Minneapolis with whom he lived a part of the time. In the Robel case the court made the following statement:

"Obviously and necessarily the amount of such damages must, in any case, be to a great extent conjectural, and much must be left to the judgment of the jury; but the statute contemplates an assessment of damages, and not a merely arbitrary award. Such assessment must be based upon the reasonable expectation of benefit to the surviving next of kin from the life of the deceased. Where such beneficiaries

were so related to him that they would not have been legally entitled to support, service, or contribution from him, it may be accepted as the law that no substantial recovery can be had without proof of such facts and circumstances as render it probable that actual and substantial benefit would have accrued to them from his continued life. However that may be, the case is not the same where the relation is such that the next of kin would have been of right entitled to the service of the deceased, or to support from him; * * * but, even without such proof, the law, in ordinary cases, presumes the life and employment to be of some pecuniary value to those who are entitled to receive the benefits of it."

Had the son lived, the father, who was about fifty five years old, would have had the legal right to call upon him to contribute to his support, and, although it was not specifically shown what the "probabilities" were as to the necessity for such support, the verdict is not so large as to justify the court in assuming that the amount is in excess of the probable loss to the beneficiary.

3. During the argument of respondent's counsel to the jury he made unnecessary comments upon the conduct of counsel for appellant. ·Appellant seeks to avail itself of the incident as ground for a new trial, and has brought it to the attention of this court by way of affidavits. No part of the controversy appears as a part of the settled case. It is the rule that whatever occurs in open court on the trial of an action, and as a part thereof, must appear by settled case or a bill of exceptions, or it cannot be reviewed on appeal. It is not sufficient that the matter appear by way of affidavits. Smith v. Wilson, 36 Minn. 334, 31 N. W. 176, 1 Am. St. 669; Smith v. Kingman & Co., 70 Minn. 453, 73 N. W. 253; Conron v. Hoerr, 83 Minn. 183, 85 N. W. 1012.

Affirmed.