PATRICIA K. GAMBLE v. GRAHAM SMITH, SR.
AND ANOTHER.[1]

December 26, 1941.

No. 33,017.

*Freeman & King,* for appellant.
*Sexton, Mordaunt, Kennedy & Carroll,* for respondents.

HOLT, JUSTICE.

Plaintiff's decedent was killed on the evening of January 4, 1941, on Bald Eagle avenue, in the city of White Bear Lake, while removing a flat tire from an automobile parked on the shoulder of the roadway, his death being caused by the alleged negligent act of defendants in driving their car upon or against him. In this action to recover for such death, the jury rendered a verdict for $1,250. Plaintiff moved to vacate the verdict and grant a new trial on the issue of damages only, or in the alternative for a new trial of all the issues, the grounds alleged being (a) insufficient damages appearing to have been given under the influence of passion or prejudice, and (b) that the verdict is not justified by the

[1]Reported in 1 N. W. (2d) 411.

458

evidence. It appears that at the trial it was stipulated that decedent's funeral and doctor's bills came to $400; but through oversight this item was not submitted to the jury. The trial court denied a new trial as to the issue of damages only, but granted a new trial on all the issues unless defendants filed their written consent to the increase of the verdict to $1,650. A timely filing of such written consent would defeat a new trial. Defendants filed the consent, and plaintiff appeals.

The evidence shows that decedent was 29½ years old and in good health at the time of his death. He was single. He had no trade, or business, or property. He was survived by his father and mother, the former 66 and the latter 58 years of age. He also left two married sisters. At the time of his death he was working at White Bear Lake for one Becksted, his aunt's husband, for the wage of $15 per week, and out of that he was required to pay one dollar per day for room and board. His employment with Becksted for some four years previous to his death was from the first of November to the first of April. The summer months, for at least four years preceding his death, decedent spent at Owatonna in the home of his parents. His work there was to care for the greens of the golf club at so much per hour. In the evening, after supper, he also cut the lawn of one Buxton. His total earnings during the summer months were estimated at $80 to $85 a month. The testimony shows that while so employed he lived with his parents and out of his earnings paid the grocery bill of the family, amounting to about $35 per month. He bought at times a coat, dress, hat, or some article of wearing apparel for his mother, and also helped pay her hospital bill for an operation, but the amount paid by him is not disclosed. When the mother was well she had steady employment at $60 per month, and will receive a pension of $15 per month when 60 years old, at which time she will be automatically retired. There was evidence that decedent had been under the influence of strong drink several times at White Bear Lake and had there been arrested for disorderly conduct while under the influence of liquor. The experienced trial

judge was of the opinion that the jury was not actuated by passion or prejudice in determining the amount of the verdict, and, with the overlooked $400 item added, deemed it not inadequate. The jury, in considering the age of decedent, his mode of life, his lack of thrift in not having acquired any property, his partial dependence on his parents and relatives for a home, could well conclude that the financial loss to his parents by his untimely death did not exceed the amount of the verdict.

It is true that Mason St. 1927, § 3157, imposes a duty on a parent to protect, to the extent of $25 a month, the municipality for poor relief supplied a child, and a reciprocal obligation of the child for relief supplied the pauper parent. Hence, it is argued, there is presumption of pecuniary loss to a parent from the death of a child by the wrongful act of another. However, as long ago as 1886, in Robel v. C. M. & St. P. Ry. Co. 35 Minn. 84, 89, 27 N. W. 305, 307, the law with respect to the measure of damages was thus stated:

"Obviously and necessarily the amount of such damages must, in any case, be to a great extent conjectural, and much must be left to the judgment of the jury; but the statute contemplates an assessment of damages, and not a merely arbitrary award. Such assessment must be based upon the reasonable expectation of benefit to the surviving next of kin from the life of the deceased. * * * However that may be, the case is not the same where the relation is such that the next of kin would have been of right entitled to the service of the deceased, or to support from him. Even in such a case, the measure of recovery would of course be affected by proof, or by the absence of it, of facts going to show the value of the life in question, and that the survivors would have derived substantial advantage from that life if it had continued. But, even without such proof, the law, in ordinary cases, presumes the life and employment to be of some pecuniary value to those who are entitled to receive the benefits of it."

Plaintiff cites Youngquist v. Minneapolis St. Ry. Co. 102 Minn. 501, 114 N. W. 259. There a verdict of $1,000 was sustained for the death of plaintiff's decedent, a 17-year-old son, who left a father surviving, it appearing that the son had for some time shifted for himself. The contention there was that the proof did not support so large a verdict. Where a son for a number of years after attaining majority has worked for himself, his achievement may give a jury a more substantial proof of what pecuniary aid his parents would be likely to receive from the continuance of his life than in the case of a son so young that he has not had time to demonstrate his ability to achieve. Plaintiff also cites Falk v. C. & N. W. Ry. Co. 133 Minn. 41, 157 N. W. 904, where a $700 verdict was unsuccessfully assailed as not supported, it appearing that the plaintiff's decedent had for years abandoned his wife. The foregoing cases surely do not sustain the claim that the verdict in the case at bar is inadequate. That larger verdicts for death by wrongful act have been sustained does not determine this appeal. The jury, and not the court, must assess the damages. This court would have been better satisfied with a larger verdict. But that is not the criterion. Plaintiff cites decisions from this and other states sustaining larger verdicts in claimed analogous or parallel cases. Under our way of assessing damages by a jury, there is no way of obtaining uniformity. We have said:

"Comparison of verdicts is not a satisfactory method for determining the reasonableness of an award in a particular case. * * * In addition to the decedent's expectancy, each case involves a consideration of such variables as the decedent's character, health, habits, talents, prospects, earnings, contributions to his dependents, and many others which affect the amount of recovery and concerning which there is permissible difference of opinion among juries." Thoirs v. Pounsford, 210 Minn. 462, 465, 299 N. W. 16, 18.

There a large verdict was involved, but the statement above made is applicable to all cases where the pecuniary loss to next of kin

from a person's death by wrongful act is to be awarded or fixed. We therefore refrain from discussing the cases cited by plaintiff of large verdicts upheld as not excessive, though very much larger than the one in the case at bar. Merely as indicative of the fact that verdicts in death cases are not uniform, we may refer to Waggoner v. Gummerum, 180 Minn. 391, 231 N. W. 10, and Wright v. Engelbert, 193 Minn. 509, 259 N. W. 75.

In our opinion the verdict is not so small as to indicate that passion or prejudice actuated the jury, nor can it be held inadequate as a matter of law.

The order is affirmed.