VERNA M. MOORE, SPECIAL ADMINISTRATRIX OF ESTATE OF FRANCES MOORE ANDERSON, v. ARTHUR M. PALEN AND OTHERS.
ELVIRA A. ANDERSON, SPECIAL ADMINISTRATRIX OF ESTATE OF FREDERICK WILLIAM ANDERSON, v. SAME.[1]

March 25, 1949.

Nos. 34,847, 34,848, 34,849, 34,850.

[1]Reported in 36 N. W. (2d) 540.

*Johnson, Sands & Brumfield* and *Durham & Swanson,* for appellants.

*Donald O. Wright,* for respondents.

LORING, CHIEF JUSTICE.

Two actions were brought under our wrongful-death statute, M. S. A. 573.02, by the special administratrices of the estates of Frances Moore Anderson and Frederick William Anderson to recover damages for the death of Frances and Frederick from methyl chloride refrigerant gas. Defendants are the owner of the building occupied by the Anderson couple and the organization which services the refrigeration system in that building. The actions were tried together to one jury, which found a verdict of $7,010.15 in favor of plaintiff in each case. This included $510.15 for funeral expenses for each decedent. Defendants appeal from the orders of the trial court denying their motions for judgment notwithstanding the verdict or a new trial in each case. The appeals are consolidated for presentation here.

Frederick Anderson and Frances Moore were married in June 1945. They died from methyl chloride poisoning sometime between December 9 and 12, 1945. Frederick was then 19 years old and Frances 18. It appeared that the apartment where the couple had lived for three months was served by a central refrigeration system

which used methyl chloride. When inhaled by human beings in amounts of two percent or more by volume, the gas from this chemical is sufficiently poisonous to cause extreme illness and even death. The couple and their cat had shown symptoms of this poisoning when last seen, but the illness was attributed to influenza. After their deaths were discovered December 12, 1945, tests made on the refrigeration plant showed a leak between the evaporator and the expansion valve in the refrigerator box in the apartment occupied by the couple. The proprietor of the refrigeration service company, which had serviced this system for the two years preceding the accident, testified that on December 5 a call was made at the apartment house; that on December 8 six pounds of liquid methyl chloride were added to the apartment house system; and that it did not contain any leak-detecting or odorizing agent, as required by an ordinance of the city of Minneapolis published December 22, 1936. There was also evidence that an employe of the refrigeration service company had worked on the refrigerator box in the apartment in question and had left a pinching tool on the exhaust suction side of the expansion valve, which, if not effective in cutting off the suction, would have permitted pressure in the apartment tank. No contention is made that the evidence of negligence is insufficient to support the verdicts.

The only surviving next of kin of Frances and Frederick Anderson were the widowed mother of Frances and the natural mother of Frederick, the plaintiffs herein. At the time of the trial Mrs. Moore was 48 years old. Mrs. Anderson's age was then 41. It appeared that prior to his marriage Frederick had assisted his parents in operating a grocery store, which was kept open for long hours. Both he and his wife, after their marriage, assisted in the store. This grocery store was sold in August 1945 in order to use the proceeds in the purchase of a restaurant at Annandale, Minnesota. Frederick and Frances were to be partners. Prior to her marriage, Frances had operated the house for her mother while the mother worked. The mother's jobs were not permanent until after the death of her daughter. After the marriage, the young couple lived with

Mrs. Moore for a while. During that period, Frances continued to help with the work and in the preparation of the meals.

Both of the young people had been of assistance to their parents. Neither had been involved in trouble of any kind. Frederick enlisted in the navy in July 1943 and received an honorable discharge in March 1945. He was wounded in action in the South Pacific, after which he spent 13 months in hospitals. With the exception of the injury to his foot, the young man had been in good health up to the time of his death.

■ We need not discuss the common-law sophistry which necessitated the enactment by Parliament of Lord Campbell's Act in 1846.[2]

The territory of Wisconsin had no statute creating a cause of action for death by wrongful act, and so our territorial legislature, in 1851,[3] enacted such a statute. In 1905, our statute was amended to create an action by the personal representative for the benefit of the surviving spouse and next of kin, superseding the provision for the benefit of the widow and next of kin. M. S. A. 573.02.[4] The nature of the right of action under this statute has been considered in Schwarz v. Judd, 28 Minn. 371, 10 N. W. 208; Sykora v. Case Threshing-Mach. Co. 59 Minn. 130, 60 N. W. 1008; Foot v. G. N. Ry. Co. 81 Minn. 493, 84 N. W. 342, 52 L. R. A. 354, 83 A. S. R. 395.

[2]Lord Campbell's Act, 9 & 10 Vict. c. 93 (1846).

[3]R. S. 1851, c. 78, § 3. See, Joel v. Peter Dale Garage, 206 Minn. 580, 289 N. W. 524.

[4]"When death is caused by the wrongful act or omission of any person or corporation, the personal representative of the decedent may maintain an action therefor if he might have maintained an action, had he lived, for an injury caused by the same act or omission. The action may be commenced within two years after the act or omission. The damages therein cannot exceed $10,000, and shall be for the exclusive benefit of the surviving spouse and next of kin, to be distributed to them in the same proportion as personal property of persons dying intestate; but funeral expenses and any demand for the support of the decedent other than old age assistance, duly allowed by the probate court, shall first be deducted and paid. If an action for such injury shall have been commenced by such decedent, and not finally determined during his life, it may be continued by his personal representa-

The defendants here contend that the burden is upon the plaintiffs to show that there was no surviving spouse before the next of kin could recover damages, except funeral expenses, since the damages are to be distributed according to the law of descent as to personal property, which in the case of a surviving spouse without children gives the entire personal property to the spouse. § 525.16. The consequences of such a rule where, as here, no proof is available as to survivorship would be to free a negligent defendant of liability, except for funeral expenses. The contention is effectively answered in Lahti v. Oliver I. Min. Co. 106 Minn. 241, 242, 118 N. W. 1018, 1019, where a complaint was sustained which did not negative the leaving of a widow, but did allege that there was next of kin. This court said:

"* * * The statutes give a right of action in cases of this character 'for the exclusive benefit of the surviving spouse and next of kin, to be distributed to them in the same proportion as personal property of persons dying intestate.' R. L. 1905, § 4503. The designation of the beneficiary is an essential element of the statute. Stewart v. Great Northern Ry. Co., 103 Minn. 156, 114 N. W. 953, 123 A. S. R. 318. The right of action depends, therefore, upon the existence of some one of the persons thus designated, and a complaint must allege that the deceased left surviving him either a widow or a next of kin. Schwarz v. Judd, 28 Minn. 371, 10 N. W. 208; Sykora v. Case Threshing-Mach. Co., 59 Minn. 130, 133, 60 N. W. 1008. If that is done, the complaint states a cause of action. The action is brought by the administrator in a representative capacity, and a recovery is for the benefit of the person or persons who, under the statute, is entitled to the money. He is the trustee of the parties to be benefited (Foot v. Great Northern Ry. Co., 81 Minn. 493, 84 N. W. 342, 52 L. R. A. 354, 83 Am. St. 395), and a

tive for the benefit of the same persons and for recovery of the same damages as herein provided, and the court on motion may make an order, allowing such continuance, and directing pleadings to be made and issues framed conformably to the practice in action begun under this section."

recovery by him will be a bar to any further action for the same cause."

However, as we view the law, when a married couple die in a common disaster and, as here, there is no proof available that one survived the other, the rights of succession to their estates and to recovery under § 573.02 are to be determined as if death occurred to both at the same instant—this, in spite of the fact that the law invokes no presumption that either survives or that they died at the same time. Willbor, Petitioner, 20 R. I. 126, 37 A. 634, 51 L. R. A. 863, 78 A. S. R. 842.[5] Any other rule would be a shield for the negligent and permit him to go unwhipped of justice. Such a consequence could not have been contemplated by the legislature in creating the action.

In the Willbor case the court said (20 R. I. 127, 37 A. 634):

"As all three of the testatrices lost their lives in the same disaster, and no fact or circumstance appears from which it can be inferred that either survived the others, the question of survivorship must be regarded as unascertainable, and hence the rights of succession to their estates are to be determined as if death occurred to all at the same moment. Underwood v. Wing, 19, Beav. 459; 4 De Gex. M. & G., 633; Wing v. Angrave, 8 H. L. Cas. 183; Wallaston v. Berkely, L. R. 2 Div. 1, Ch. 213; Re Wainwright, 1 Sw. & Tr. 257; Scrutton v. Pattillo, L. R. 19 Eq. 369; Coye v. Leach, 8 Met. 371, 41 Am. D. 518; Johnson v. Merithew, 80 Me. 111, 13 A. 132, 6 A. S. R. 162; Newell v. Nichols, 12 Hun. 604; 75 N. Y. 78, 31 Am. R. 424; Re Hall, 9 Cen. L. J. 381; Russell v. Hallett, 23 Kans. 276; Ehle's Estate, 73 Wis. 445, 41 N. W. 627; 24 Am. & Eng. Ency. L. 1027-1032."[6]

This rule was approved in Young Women's Christian Home v. French, 187 U. S. 401, 410, 23 S. Ct. 184, 186, 47 L. ed. 233, 236, a testamentary beneficiary case, where the Supreme Court, speaking through Mr. Chief Justice Fuller, said:

---

[5] Cf. Newell v. Nichols, 75 N. Y. 78, 89-90, 31 Am. R. 424; Underwood v. Wing, 4 De Gex, Macnaghten & Gordon, 633, 660.

[6] See, also, M. S. A. 525.90, subd. 1.

"The rule is that there is no presumption of survivorship in the case of persons who perish by a common disaster, in the absence of proof tending to show the order of dissolution, and that circumstances surrounding a calamity of the character appearing on this record are insufficient to create any presumption on which the courts can act. The question of actual survivorship is regarded as unascertainable, and descent and distribution take the same course as if the deaths had been simultaneous."

We have cited this case with approval in Miller v. McCarthy, 198 Minn. 497, 501, 270 N. W. 559, 562. Although the Miller case involved the proceeds of an insurance policy and there was evidence sufficient to go to the jury on the question of survivorship, we regard the rule as sound and in furtherance of justice as applied to cases of death by wrongful act. Where the defendant seeks to escape liability by the claim that there is no evidence that a spouse did not survive the decedent, the burden of proof should be upon him to prove such survival, and in the absence of proof his claim should fail.

■ While the assignments of error are insufficient to challenge the verdicts as excessive, respondents have argued the point without challenging the assignments, so the question is before us.

Our decisions make it clear that in actions for wrongful death damages for the potential support of children can be awarded to the parent beneficiaries, even though the children be adults and have been separated from the parents in terms of aid or benefit to the parents at the time of the wrongful death. M. S. A. 261.01 requires children to support poor and indigent parents. This statute was cited by this court in support of recovery in Gamble v. Smith, 211 Minn. 457, 1 N. W. (2d) 411, a wrongful-death case. In Robel v. C. M. & St. P. Ry. Co. 35 Minn. 84, 89, 27 N. W. 305, 307, the court emphasized the right to support which might accrue to the parents in the future. There, the parents of the deceased adult child were living in Germany. In Youngquist v. Minneapolis St. Ry. Co. 102 Minn. 501, 114 N. W. 259, a verdict for the father was sustained

despite the fact that the son was only 17 and lived apart from the father, who had remarried after the death of the boy's mother. The court held that there was a presumption that life has value, citing the Robel case.

On the facts before us, this is a strong case to sustain the damages awarded by the jury. Frederick and Frances were contributing to the operation of the grocery store and were to be partners in the new restaurant. Frances's mother had only periodic employment and might have become dependent on the young people, since she had no husband. The evidence shows that both were still minors and closely connected with the home. Under the circumstances of this case, the marriage had not cut off the parent-child relationship. There was still an economic interdependence between the parents and the young people. Probable contributions are a substantial element in computing damages to parents for loss of children. Annotations, 48 L.R.A.(N.S.) 687; Ann. Cas. 1916B, 533. Other jurisdictions have adopted the same rule—that the parents can recover even if the child has been emancipated. See, Annotations, L. R. A. 1916E, 118, 122; Duzan v. Myers, 30 Ind. App. 227, 234, 65 N. E. 1046, 1049, 96 A. S. R. 341. We do not regard the damages awarded as excessive.

■ That a child has married does not annul the liability under § 261.01 nor relieve the wrongdoer under § 573.02. St. Louis S. W. Ry. Co. v. Huey, 61 Tex. Civ. App. 605, 130 S. W. 1017; Galveston, H. & S. A. Ry. Co. v. Ford, 22 Tex. Civ. App. 131, 54 S. W. 37; Younger Bros. Inc. v. Ross (Tex. Civ. App.) 151 S. W. (2d) 621. Cf. Hilliard v. Southern Kansas S. L. Co. 146 Kan. 288, 70 P. (2d) 28. But cf. Robinson v. Dixon, 91 N. H. 29, 13 A. (2d) 163; see, McKay v. New England Dredging Co. 92 Me. 454, 461, 43 A. 29, 30-31; Annotation, L. R. A. 1916E, 190.

Orders affirmed.