MARY A. CLARK, Administratrix, *vs.* ST. PAUL & SIOUX CITY RAILROAD COMPANY.

## July 8, 1881.

**Master and Servant—Duty to Provide Proper Instrumentalities—Knowledge of Dangers incident to Employment.**—The rule that, in the contract of employment in a dangerous occupation like that of operating a railroad, there is an implied obligation in law, resting on the employer or master, which requires him to use due care in supplying and maintaining the instrumentalities for the performance of the work which he requires of his servants, and renders him liable for injuries occasioned by neglect or omission to fulfil this obligation, does not apply to injuries from perils which were known by the servant to exist, and to be incidental to the employment, when he entered upon it. If a servant enter into an employment involving dangers of personal injury which the master might have avoided, he takes upon himself the risk of all the hazards incident to the employment, the existence and nature of which were known to him when he entered the service, and which he had no reason to expect would be obviated or removed. The principle applied to the case of a servant who was injured by coming in contact with a roof or awning projecting from the side of an elevator over a side-track, upon which the servant was engaged in moving freight cars.

Appeal by defendant from an order of the district court for Scott county, *Macdonald,* J., presiding, refusing a new trial.

*E. C. Palmer,* for appellant.

*O'Brien & Wilson,* for respondent.

CLARK, J. The plaintiff brought this action, as the legal representative of James S. Clark, deceased, against the railroad company, defendant, for damages for negligently, and in violation of its duty, subjecting her intestate to the peril of being struck by a roof or awning projecting over its side-track, from contact with which he met his death, while engaged in the service of the company. The plaintiff had a verdict, which the defendant claims is erroneous for two principal reasons—*First,* the absence of any negligence or omission of duty causing the injury on the part of the defendant; and, *second,* contributory negligence, or the voluntary assumption of the risk of the peril from which the injury happened, on the part of the deceased. The evidence is all before us.

1. In the contract of employment in a dangerous occupation, like that of operating a railroad, there is an implied obligation in law resting on the employer or master, which requires him to use due care in supplying and maintaining the instrumentalities for the performance of the work which he requires of his servants, and renders him liable for injuries occasioned by neglect or omission to fulfil this obligation. *Drymala* v. *Thompson,* 26 Minn. 40.

The verdict for the plaintiff involves a finding by the jury that the defendant violated its obligations or duty to the plaintiff's intestate, by suffering the elevator roof or awning to be constructed and maintained in the position in which it was, with reference to the side-track, upon which it was a part of the duty of the deceased, as a switchman or brakeman, to assist in moving freight cars. The roof or awning was built out from the side of an elevator at Shakopee, on the line of the defendant's railroad, and projected over a side-track, upon which freight cars were accustomed to be moved, in such a position, and with such a downward pitch or inclination, that its lowest projection would strike a man of ordinary height, standing erect upon the centre of the roof of an ordinary freight car moving under it, in the head,

while it would not come in contact with a man standing eight inches or a foot aside from the centre of the car. Its object was to protect grain from the weather while loading from the elevator into the cars, and it projected a little beyond the centre of the cars, so as to shed rain upon the roof, and so over them. It had been maintained in this position for eight years or more at the time of the accident. The duties of a brakeman, while engaged in moving cars, require him to pass over them, and a board about fifteen inches in width, called the "running-board," is placed along the centre of the roof, to facilitate such passage, the roof of the cars being constructed with a slight pitch, and therefore difficult to pass or stand upon when wet or slippery. The plaintiff's intestate was struck by the projecting corner of the awning, while engaged in the line of his duty in moving freight cars upon the side-track. He could only have been struck while standing erect on the running board. If he had stood down upon the roof of the car, or stooped, he would have escaped. The evidence does not disclose any necessity for the construction and maintenance of the awning in such a dangerous position. Upon this state of facts, the jury would have have been abundantly justified, under the rule above mentioned, in reaching a conclusion that the defendant had failed in its implied obligation and duty to the deceased as its servant, and was responsible for the injury, if the deceased had entered upon the service relying upon the obligation or duty of the company to use due care in the construction and location of its road with respect to this structure, and in ignorance that it had failed to do so, and had remained in ignorance of the neglect up to the time of the accident.

2. But the element of knowledge as to the real position of the side-track with reference to the awning, and as to the exact nature and degree of the peril therefrom, by the deceased, when he entered the employment, changed the nature of his employer's obligation to him. The employer had no right to subject him to an unnecessary peril without his consent; but it is well settled in the courts of this country and England that, if a servant chooses to enter into an employment involving dangers of personal injury which the master might have avoided, he takes upon himself the risk of all the hazards incident to the employment, the existence and nature of which were

known to him when he entered the service, and which he had no reason to expect would be obviated or removed. If a servant accepts service with a knowledge of the position of structures from which he has occasion to be apprehensive of injury, he cannot require the master to make changes so as to obviate the danger, or hold him liable for damages in case of injury. These views are maintained in the following cases: *Fleming* v. *St. Paul & Duluth R. Co.*, 27 Minn. 111; *Gibson* v. *Erie Ry. Co.*, 63 N. Y. 449; *Dillon* v. *Union Pacific R. Co.*, 3 Dillon, 319; *Owen* v. *N. Y. Cent. R. Co.*, 1 Lans. 108; *Hayden* v. *Smithville Manuf'g Co.*, 29 Conn. 548; *Ill. Cent. R. Co.* v. *Welch*, 52 Ill. 183; *Devitt* v. *Pacific R. Co.*, 50 Mo. 302; *Baylor* v. *Delaware, L. & W. R. Co.*, 40 N. J. L. 23; *Clarke* v. *Holmes*, 7 Hurlstone & Norman, 937; *Woodley* v. *Metropolitan Dist. Ry. Co.*, L. R. 2 Ex. Div. 384.

With respect to the knowledge by the deceased of the particular peril from which the accident happened, the following uncontroverted facts appear from the testimony: The deceased was first in the employment of the company from August to November, 1878, as a car repairer and assistant switchman at Shakopee, and, while so employed, it was his duty and he frequently did assist in moving freight cars upon this elevator track under the awning. He knew the position of the awning was such that if he stood erect upon the running-board on a car passing under it, he would be struck; he had been observed to stoop when passing under it, and he cautioned his fellow-servants against the danger. He entered the service of the defendant again in January, 1879, in precisely the same employment, and continued in it till the accident. Immediately after the accident, he stated that the roof hit him, and knocked him off the car, and, in answer to a question if he did not know the roof was there, he said: "Yes; but I did not think of it at the time." It does not appear that anything occurred to distract the attention of the deceased, or that he was interfered with in any respect by others, or that he stood, by the direction of any one, or by the force of any unusual circumstances, where he did when he was struck. The accident, so far as the evidence discloses, was the result of inattention to a known peril on the part of the deceased. Having entered the service with full

knowledge of its existence and nature, he must be held to have taken the risk of injury from it on himself, and to have waived any obligation on the part of the defendant, so far as he was concerned, either to remove the peril, or to respond in damages for injuries from it.

The verdict cannot be sustained on the uncontroverted facts appearing from the testimony, and the order denying the defendant's motion is reversed, and a new trial granted.