## CHARLESTON.

UNFRIED v. BALT. & O. R'D CO.

*(HOLT, JUDGE, absent.)

Submitted June 6, 1890.—Decided December 3, 1890.

NEW TRIAL—VERDICT.

In an action for damages, where the verdict of the jury is so er-

*Case submitted before Judge Holt's appointment.

roneous as to clearly indicate prejudice, partiality, passion or corruption in arriving at their conclusions, the defendant on motion is entitled to a new trial; and it is error in the court to allow the plaintiff to elect to take a less sum suggested by the court, when there are no *data* before the court, by which said smaller sum could be rightly and definitely ascertained, but which is fixed by the discretion of the court unaided by evidence.

*H. M. Russell* for plaintiff in error cited:

24 W. Va. 37; 11 W. Va. 235; 15 Gratt. 572; 20 Rep. 239; 18 Kan. 529; 9 So. Car. 20; 11 S. E. Rep. 39; Kerr, Frand & Mist. 73; 10 Atl. Rep. 237; 11 N. E. Rep. 764; Id. 477; 10 S. E. Rep. 39; 30 W. Va. 798; 31 W. Va. 122; 27 W. Va. 152; Id. 285; 31 W. Va. 116; Id. 142; 15 W. Va. 628.

*B. B. Dovener* and *J. O. Pendleton*, for defendant in error.

*J. O. Pendleton* and *B. B. Dovener* for defendant in error, *J. O. Pendleton* cited:

27 W. Va. 145; 28 W. Va. 610; 52 Ill. 183; 11 Gratt. 722; 19 Barb. 461.

ENGLISH JUDGE:

On the 16th day of July, 1884, John Unfried instituted an action of trespass on the case against the Baltimore & Ohio Railroad Company, in the Circuit Court of Ohio county claiming damages to the amount of twenty five thousand dollars for injuries received while in the employ of said railroad company. On the 12th day of January, 1885, a demurrer was sustained to the plaintiff's declaration, and on his motion leave was granted him to amend his declaration, and the case was remanded to rules for that purpose. On the first Monday in March, 1885, an amended declaration was filed, and on the 14th day of April, 1885, the defendant by its attorney demurred to the plaintiff's amended declaration and to each count thereof, and the plaintiff joined, and on the 18th day of September, 1885, the court overruled said demurrer; and thereupon the defendant pleaded not guilty, and in addition thereto the defendant filed four several pleas in writing, numbered, respectively, two, three, four, and five.

The first of said pleas is, in effect, a plea of accord and satisfaction, alleging that the said plaintiff ought not to have or maintain his action against said defendant, because, it says, after the committing of the grievances in the plaintiff's declaration mentioned, and before the bringing of said suit, towit, on the 20th day of June, 1884, at the county of Ohio, the said defendant procured the Baltimore & Ohio Employes' Relief Association to pay to the said plaintiff, and the last-mentioned association then and there on behalf of the said defendant paid to the said plaintiff, the sum of twenty seven dollars, for and in full satisfaction and discharge of the said grievances in the said declaration mentioned; and which said sum of twenty seven dollars he, the said plaintiff then and there accepted and received of and from the said association in full satisfaction and discharge of the said grievances, and this the said defendant was ready to verify.

Plea No. 3 alleges, in substance, that after the commission of the grievances in the plaintiff's declaration mentioned on the 20th day of June, 1884, the Baltimore & Ohio Employes' Relief Association paid to said plaintiff the sum of twenty seven dollars, for and in satisfaction of said grievances in the plaintiff's declaration mentioned, which said sum of twenty seven dollars he, the said plaintiff, then and there accepted and received of and from the said association in full satisfaction and discharge of the said grievances, concluding with a verification.

Plea No. 4 is in substance the same as No. 3, with the exception that it alleges that the defendant paid said plaintiff the sum of twenty seven dollars in full satisfaction and discharge of the said grievances in the plaintiff's declaration mentioned, which sum the plaintiff accepted and received of and from said defendant in full satisfaction and discharge of said grievances, concluding with a verification.

Plea No. 5 alleges that before the commencement of said suit, towit, on the 20th of June, 1884, at the said county of Ohio, the said plaintiff by his certain writing of release sealed with his seal, the date whereof is a certain day and year last aforesaid therein mentioned, towit, the day and year last aforesaid, did release and forever discharge the said

defendant from all claims and demands for damages by reason of the said grievances in said declaration mentioned, which he, the said plaintiff, then and there or might or could thereafter have against the said defendant, as by said writing or release, reference being had thereto, will fully appear, concluding with a verification:

To these pleas the plaintiff replied generally on the 17th day of April, 1886; and on the 14th day of May, 1886, the plaintiff by his attorneys moved the Court to be allowed to withdraw his general replication to the special pleas heretofore filed, and to file a special replication thereto in writing, which he then tendered; to which motion the defendant objected, and also objected to the filing of said special replication on the ground that the same was tendered too late, and also on the ground that it is insufficient in law; but the Court overruled its objection, and allowed said replication to be filed, which was accordingly done; and the defendant excepted. Thereupon the defendant demurred to the said special replication, in which demurrer the plaintiff joined, and on the 8th day of January, 1887, the Court set aside the order allowing said special replication to be filed, and sustained the objections of the defendant to the filing of the plaintiff's replication, and leave was given the plaintiff to file another special replication; and thereupon the plaintiff tendered another special replication marked "No. 2" to the defendant's four special pleas. To the filing of said special replication marked "No. 2" the defendant objected on the ground that the same was insufficient in law; and on a subsequent day said objection to the filing of plaintiff's special replication No. 2 was overruled, and said replication was ordered to be filed. The plaintiff, in said special replication No. 2, said that he ought not to be barred from having or maintaining his action because of anything alleged by the defendant in its four pleas numbered, respectively, two, three, four and five, because, he says, on the 20th day of June, 1884, at Wheeling, Ohio county, W. Va., he signed an instrument in writing which was substantially as follows, and to the following effect, towit:

"Wheeling, June 20th, 1884. Received of the Baltimore & Ohio Employes' Relief Association, by the hands of W.

·B. McClung, the sum of twenty seven dollars, same being the full allowance as a member of the said association I am entitled to receive from its funds for the period commencing May 1st, 1884, and ending May 31st, 1884, by reason of injuries received whilst in the discharge of duty in the service of the B. & O. Railroad Company; and, in consideration of the receipt by me of the said sum of twenty seven dollars, I do hereby release and forever discharge the said company, and all other companies operating its roads, branches, and cars, from all claims and demands for damages, indemnity, or other form of compensation I now or may or can hereafter have against either of the aforesaid companies by reason of said injuries. I declare on honor that during the period above stated I have not been able, by reason of said injuries, to perform my accustomed labor, and have not done work of any kind for pay:

his<br>" John x Unfried.<br>mark

"Witness :    T. E. Mulligan."

Plaintiff says that at the time he signed the above writing he received the said sum of twenty seven dollars, and that the said sum of twenty seven dollars and the said writing are the release, receipt, and sums of money set forth in the defendant's four several pleas aforesaid.   The plaintiff further says that at the time he signed the said writing he was a German, unable to speak, write or understand the English language, and that he signed the said writing in the belief that he was then and there receipting for the sum of twenty seven dollars to which he was entitled as a member of said association, and did not know, and had no means of knowing, and was not informed by the said McClung, the said defendant, or any one for them, that he was waiving or relinquishing any right of action or claim for damages he then had against the defendant by reason of the injuries and grievances set forth in the plaintiff's declaration.   On the contrary, the said McClung, then acting as the agent of the defendant, and the said defendant by its agents, then and there represented to the plaintiff that the said writing was merely a receipt, and contained nothing but

a receipt for the said sum of twenty seven dollars, and said writing was so translated by said agents to him. The plaintiff charges that his signature to said writing was made by him under a mistake as to its purport, and was procured from him by said defendant and its agents by the foregoing false, fraudulent and deceitful representations and conceal-ments as to the contents, meaning and intent of said writ-ing then and there made to him by the said defendant and its agents, and this the plaintiff was ready to verify ; where-fore he prays judgment, and that his damages by him sus-tained by reason of the grievances set forth in the declar-ation be adjudged him *etc.*

On the 8th day of October, 1887, the court, before the jury retired, directed them in addition to their general ver-dict to find in writing answers to certain questions of fact, which are given below with the answer of the jury to each question.

Q. "Could not the plaintiff, under the circumstances in which he was placed at the time of the injury, by the exer-cise of reasonable and ordinary care for his own protection, have avoided the accident?   Ans. No.

Q. "Was not the plaintiff negligent in placing himself in the position in which he was standing at the time when the injury occurred, instead of waiting in a safer place until the truck was ready to be removed?   Ans. No.

Q. "Was the negligence of the engineer, Connelly, in running and managing the engine, of which he was in charge at the time of the injuries, the sole cause of the plaintiff's injury?   Ans. Yes.

Q. "Was there any fraudulent or deceitful misrepresen-tation or concealment by Mulligan at the time when the receipt of June 20, 1884, was executed by the plaintiff. Ans. Yes.   [Signed] CHAS. J. MEYER, Foreman."

As to the general verdict, they do say :   " We, the jury, find for the plaintiff, and assess his damages at seven thou-sand ($7,000) dollars. CHAS. J. MEYER, Foreman."   Where-upon the defendant by its attorney moved the Court to set aside the verdict of the jury rendered therein, and grant it a new trial, which motion being argued by counsel and con-sidered by the Court, and the Court, being of opinion that

the verdict of the jury in favor of the plaintiff for seven thousand dollars damages was excessive in amount, proposed that the plaintiff should take the sum of three thousand five hundred dollars in lieu of the said sum of seven thousand dollars, and, the plaintiff having elected to take the said sum of three thousand and five hundred dollars as proposed by the Court, the Court overruled the defendant's motion for a new trial; to which action of the Court in giving the plaintiff said election, as well as to its action in overruling the defendant's motion to set aside the said verdict, the defendant excepted, and judgment was rendered against the defendant for the said sum of three thousand five hundred dollars with interest thereon from the 21st day of July, 1888, until paid.

The evidence of numerous witnesses for the plaintiff and defendant was given during the trial; also documentary evidence was introduced, including the constitution and by-laws of the Baltimore & Ohio Employes' Relief Association; also certain receipts and releases signed by the plaintiff for money paid him subsequent to the date of his injury, which appear in a bill of exceptions containing a certificate of the evidence; and thereupon the Court, at the instance of the plaintiff, gave the jury the following instructions:

"If the jury believe from the evidence that the defendant was negligent in not providing and making reasonable rules and regulations governing the men working at the time he received the injuries complained of, as well as engineers, engines, and those running them, in approaching the point aforesaid, and that plaintiff, while in the exercise of ordinary and reasonable care, was injured by the negligence of the defendant of the character mentioned in this instruction, they will find a verdict for the plaintiff, unless they further believe that the plaintiff has released and discharged the defendant from liability therefor. If the jury believe from the evidence that the receipt and release of June 20, 1884, was obtained from John Unfried, the plaintiff, by the defendant, or by some person for it, by false representations as to its contents and meaning, then said release is null and void, and can not be held as a bar to the

plaintiff's claim. The false and fraudulent representations of an agent when acting in the scope of his authority bind the principal, and a man can not take any benefit under false and fraudulent representations made by his agent, though he may have been no party to the representations. Should the jury find a verdict for the plaintiff, they are to determine the amount of damages to which he is entitled by reason of the wrongs and injuries complained of in the amended declaration. The damages must be measured by the loss of time of the plaintiff during the cure and expense incurred in respect to it, the pain and suffering undergone by the plaintiff, and any resulting permanent injury, especially where it causes a disability for further exertion in whole or in part, and any consequent pecuniary loss from such disability; and if the jury should find that the defendant, in respect to the wrongs and injuries complained of, was guilty of gross negligence, they may give such damages as from the evidence in the exercise of a sound discretion they may believe the plaintiff is entitled to as compensation for such wrongs and injuries, not exceeding twenty five thousand dollars."

To the giving of each of which instructions the defendant by its counsel objected, which objection was overruled by the court. The defendant then asked the court to instruct the jury that, "upon all the evidence which had been introduced in the case, the jury should find for the defendant," to the giving of which instruction the plaintiff objected, and the court sustained said objection. The defendant also asked the court to give the following instructions, numbered two and eleven, to the jury, to wit:

(2) "A person who enters a perilous employment, such as working upon or near the tracks of a railroad company, assumes all ordinary risks attending the employment, and if he is injured by reason of such ordinary risks he can not recover from his employer damages for the injury."

(11) "If the jury believe from the evidence that the said John Unfried executed the paper introduced in evidence dated June 20, 1884, by placing his mark thereto, and if they further believe that the said John Unfried did not understand the contents of the said paper, and could not read

the same because he did not understand the English language, and if they further believe that nothing was done by any one connected with the defendant company or with the relief association to prevent the said John Unfried from having the said paper translated to him, or from otherwise becoming acquainted with the contents of the same, then it was the duty of the said John Unfried to take proper precautions himself, and of his own motion, to have such paper translated or explained to him; and, if he chose to sign the same without taking such precautions, he did so at his own peril, and must take the consequences, and be bound by the paper."

To the giving of each of these instructions the plaintiff objected, and the court sustained the said objections and refused to give said instructions in that form, but afterwards gave them, with modifications, in the following language:

(2) "A person entering a perilous employment, such as laboring on or near the tracks of a railroad company, himself assumes all the ordinary and usual risks attending the employment, and, if he is injured by reason of such ordinary risks, he can not recover from his employer damages for the injury, but he does not assume the risk of negligence on the part of his employer."

(11) "If the jury believe from the evidence that the said John Unfried executed the paper introduced in evidence dated June 20, 1884, by placing his mark thereto, and if they further believe that the said John Unfried did not understand the contents of the said paper, and could not read the same because he did not understand the English language, and if they further believe that nothing was done by any person connected with the defendant company or with the relief association to prevent the said John Unfried from having the said paper translated to him, or from otherwise becoming acquainted with the contents of the same, then it was the duty of the said John Unfried to take proper precautions himself, and of his own motion, to have such paper translated or explained to him; and, if he chose to sign the same without taking such precautions, he did so at his own peril, and must take the consequences, and be bound by the paper, unless the jury believe he was induced

to place his mark on said paper by misrepresentations fraudulently made."

To which modifications of said instructions the defendant objected, and the court overruled said objections; to all of which rulings the defendant by its counsel excepted, and applied for and obtained a writ of error to this Court.

The first error relied on by the plaintiff is the action of the court in overruling its demurrer to the plaintiff's amended declaration. It is earnestly contended by counsel for the defendant, that the demurrer should have been sustained to the second count of said amended declaration. This demurrer to said amended declaration presents for consideration the question as to whether an employe engaged as a carpenter in repairing cars for a railroad company should be regarded as a fellow-servant with the engineer of a locomotive belonging to the same railroad company, who is engaged in driving cars upon the railroad of said company, and it seems to me that this is the first question to be determined.

In the case of *Cooper* v. *Railroad Co.*, 24 W. Va. 38, this Court held that a brakeman employed on one of the freight-trains of a railroad company, and an inspector or master mechanic charged with the duty of keeping such machinery, cars, and appliances in repair, can not be regarded as fellow-servants in such a sense as to prevent the brakeman from recovering of the company for an injury sustained by him because of the negligence of such inspector or master mechanic. In that case, the plaintiff's intestate, William Patten, lost his life by reason of a hand-hold on one of the freight-cars giving way, while he was climbing on to the car in performance of his duty as such brakeman, by reason of which he was precipitated to the track, and lost his life. There can be no question that it is an imperative duty of the railroad company to keep its machinery and appliances in order so as not, by want of proper care, to endanger the lives of its employes; and in doing so it is necessary to intrust the inspection of such matters to a master mechanic who supervises and is responsible for that department, and who must be considered as standing in the place of the railroad company itself, and it would not be proper to regard him as

a fellow-servant with a person holding the position of brake-
man on a train.

Rorer on Railroads (volume 2, p. 832) says: "It is well
settled that a corporation can not act personally; that it re-
quires some person to superintend structures, purchase and
control cars, employ and discharge men, and provide all
the needful appliances. This can only be done by agents.
When the directors themselves act as such agents, they, as
the executive head, represent the corporation. When they
devolve those duties of executive head in reference to any
portion of their duties upon some one else appointed to
perform them, then such appointee in that particular mat-
ter, equally as much so as if done by themselves, represents
the corporation, and although in doing so he may be and is
a servant of the corporation, inasmuch as he serves it, yet
he is not in these respects a fellow-servant, co-laborer, or
co-employe in the common acceptation of the term, al-
though he may labor with and like others who are to each
other co-laborers. In this respect, he is head—he is mas-
ter."

The master mechanic spoken of in the case of *Cooper* v.
. *Railroad Co., supra,* must be regarded as the *alter ego* of the
railroad company, he having the charge and superintend-
ence of that department; and it follows that he could not
be regarded as a fellow-servant of the brakeman who was
injured by the defective hand-hold.

Again, Rorer on Railroads (volume 2, p. 830) says:
"And it does not matter to the contrary that, the servants
are employed in different departments or duties, if the em-
ployment be in the same business enterprise, and by the
same master. Thus it is expressly holden that the duties
of a switchman and engineer on the same road, though dif-
ferent and independent of each other, and discharged nec-
essarily by persons having no control over each other, or
one over the other, are of such character as to come within
the rule of law which prevents a recovery against their
common master or employer for an injury received by either
from the negligence or want of care of the other, when the
road is being operated and exclusively controlled by such
employer."

Again, under the head of "Fellow-Servants," Wood, in his work on Master and Servant (page 809, § 425) says: "But the fact that the servants were engaged in separate and distinct branches of service does not render the master liable; all who are engaged in the same common service, from the highest to the lowest, and who are subject to the same general control, are fellow-servants within the rule."

Sherman & Redfield, on the Law of Negligence (section 224) under the title of "Who are Fellow-Servants?" say: "We now approach a question which has given rise to irreconcilable differences of opinion, and upon which the cases must be marshaled in divergent lines, who are fellow-servants? To a certain extent, all the cases agree and all rest upon an intelligible principle. Any person in the employment of the same master, and under his control, whether his position is equal, inferior, or superior to that of the injured servant, so long as he is not intrusted with a power of control over that servant, is a fellow-servant with him. No extent of difference in their wages, social position, or work affects the relation of servants of the same master so long as they are employed in one general business;" and the same author, in giving illustrations of fellow-servants under all rules, says: "In courts holding to the more liberal American rule, a negligent locomotive-engineer was held to be a fellow-servant in common employment with a fireman on the same engine, * * * with a car-repairer and cleaners in the railroad yard" etc., Id. § 241; citing Railway Co. v. Harrington, 62 Tex. 597.

In that case the husband of the plaintiff was a car-repairer in the yard of the company, and the petition charged that he was run over and killed in consequence of the negligence of the engineer and persons in charge of the engine without the fault of Harrington. On demurrer to the petition it was held that the petition was sufficient, and the demurrer was overruled; but, upon appeal to the Supreme Court, in was held, that, "where two servants are employed by the same master, labor under the same control, derive their authority and receive their compensation from a common source, and are engaged in the same business, though in different departments of the common

service, they are fellow-servants;" citing *Dallas* v. *Railway*, 61 Tex. 196.

In the case of *Clark* v. *Railroad Co.*, 28 Minn. 128 (9 N. W. Rep. 581) it appears that one J. S. Clark was car-repairer, and was killed by a projecting roof or awning projecting over the side track, while he was engaged in the service of the company in moving freight cars. It was held, among other things, that "if a servant enters into an employment involving dangers of personal injury which the master might have avoided, he takes upon himself the risk of all hazzards incident to the employment, the existence and nature of which were known to him when he entered the service, and which he had no reason to expect would be obviated or removed."

In the case of *Railroad Co.* v. *Murphy*, 53 Ill. 336, it appears that James Murphy, a car-repairer, was killed while at work in the company's yard. "He and a fellow-workman had been engaged in 'jacking up' and repairing a car in a freight train, and, having finished the work, had started for the shop where they kept their tools, when, in passing down between the rails of the main track, he was overtaken and struck by a switch-engine, and so injured that he soon after died;" and, upon a suit brought to recover damages for wrongfully causing his death, it was held that, "under the circumstances, the deceased and the engineer managing the engine, through whose negligence he received the injury, which caused his death were fellow-servants in such a sense as to subject them, to the operation of the well-established rule, which refuses a remedy against a common master in favor of one employe who receives an injury through the carelessness of another, while in the same line of duty;" and the court further said that, "while it is not easy to define who are to be considered fellow-servants in the sense of the general rule, which exempts the common master from liability for injuries received by one employe through the carelessness of another while in the same line of duty, with such perfect accuracy that doubtful cases will not occur," yet the court approved of the following instruction, asked by the defendant. "If the jury believe from the evidence that both the deceased and

the engine-driver, at the time the deceased was injured, were in the employment of the railroad company, and that their ordinary occupations in such service bore such rela- tions to each other that the careless or negligent conduct of the engine-driver endangered the safety of the deceased, then such danger was incident to the employment of the deceased, and the plaintiff could not recover in that case;" and the court further held that "the fact that while the en- gine-driver received his orders from the yard-master, while the deceased received his from the foreman of the repair gang, could not be considered as material, they were still the:fel- low-servants of a common master, working in the same place to subserve the same interests, and with their occu- pations so related to each other that the safety of the deceased necessarily depended to a greater or less extent upon the care of the engine-driver."

In *Valtez* v. *Railway Co.*, 85 Ill. 500, a case which is re- garded as precisely in point, the court held that, " where a servant of a railway company sustained personal injury while engaged in repairing cars through the negligence of a fellow-servant, a driver of a switch-engine, in mistaking a signal while pushing cars, it was held that the plaintiff could not recover against the company, the common master, he and the fellow-servant being in the same line of employ- ment." See, also, Patt. Ry. Acc. Law, 368.

In the case of *Madden* v. *Railway Co.*, 28 W. Va. 618, SNYDER, J., in delivering the opinion of the Court, after citing numerous authorities, says: "The rule deducted from these principles and authorities would seem to be that two servants of the same master are not fellow-servants when one acts in a superior capacity to the other in regard to some duty due from the master, and the master is liable for any injuries to the subordinate caused by the careless- ness or negligence of the superior. At one time it was held that, to make the master responsible, he must have intrusted this superior servant with the actual control of all his busi- ness—made him *alter ego*. It was subsequently held that this superior servant must have power to employ and dis- charge the inferior servant; but now it seems to be con- sidered sufficient that the inferior servant is under the control and subject to the order of the superior servant."

From these authorities, we can but conclude that John Unfried, the defendant in error, and the engineer upon the moving train by which he was injured, were fellow-servants. The engineer was in no manner his superior officer, and it is not alleged in the declaration that he had any right to command or control him. They were working for a common master, and, although working in different capacities and under different foremen, we have seen by the authorities cited that they must be regarded as fellow-servants.

Referring to the second count in plaintiff's declaration, we find that the material allegations or averments on which he relies are that the defendant was possessed of and using and operating a railroad from its bridge over Wheeling creek, to the southern boundary of Ohio county, and was possessed of a side track between said two points running from said railroad to its machine or repair-shops, and of a truck and certain railroad cars then standing on said side track, and was also possessed of a locomotive engine and train of cars attached thereto, which were then under the care and management of certain servants of the defendant, who were then driving the same along the said railroad to and upon said side track; that plaintiff was a carpenter in the employ of the defendant to do carpenter-work about said machine-shop in the repair of trucks and machinery under the direction of the foreman of said shop, who was an officer of the defendant, and plaintiff's superior officer; that he was directed by said foreman to do some work on said truck, but that he did not know at or before that time, nor was he informed by the defendant, or any one for it, that the locomotive engines or trains were ever run by the defendant or operated on said side track in the neighborhood of that truck or other trucks on said track while they were being repaired, and that he had no means, by the exercise of reasonable diligence, of knowing that locomotive engines and trains were so run and operated; that after a truck had been placed on said side track for repair, or for other carpenter work, the defendant had not before the time aforesaid operated or run locomotive engines or trains upon said side track in the neighborhood of the truck before its repairs were completed, and he had no

reason to believe that any train or locomotive engine would be operated or run on said track at the time of the happening of the injury complained of thereinafter. He also charges that the officers and servants in charge of said locomotive engine and train, whose operation and management caused the injury complained of, were employed in a department of the defendant entirely disconnected and separated from the machine or repair shop in which plaintiff was employed, and that the duties of the said officers and servants and of the plaintiff were entirely dissimilar, and in no way connected and that while he was performing certain carpenter work on the truck aforesaid, which he had been employed to do by the defendant, the defendant, by its servants, so carelessly, improperly, and negligently drove and managed said locomotive engine and train, that through and by the negligence and improper conduct of the defendant said train struck with great force and violence against said cars standing on said side track, which cars were thereby driven with great force and violence against and upon said truck, and the plaintiff was caught and crushed between said cars and said truck, and he was thereby seriously injured, his left arm broken in two places, his shoulder and breast badly mashed, two fingers of his right hand destroyed, his left hand cut off, and he was confined three months to his bed, five months in his house, incurred large medical bills, was permanently injured, and rendered unfit for work forever, by means whereof he was damaged twenty five thousand dollars.

Now, as to the allegation or averment in said count that he did not know that the defendant's locomotive engine and train came in on said side track until the repairs were complete, I do not regard it as material, if true, as we are bound to regard it upon demurrer, if the facts are well pleaded, for the reason that the coming in of said train on said track was one of the risks incident to the employment in which he was engaged; and we find in Patterson on Railway Accident Law (page 343, § 316) the author says: "There is no implied obligation upon the part of the master to indemnify the servant against the ordinary risks of the service, * * * and upon this principle train hands take

the risk of injury from the negligent movement of other trains, * * * from being struck by engines or cars moving in a railway yard, without notice or unattended;" also section 317: "* * * Car-repairers, while working beneath cars in a railway yard, take the risk of injury from the car being struck by another car when they habitually do such work without asking the car to be protected by a flag."

Neither do I regard it as material that said second count charges that the defendant in error was working in a department of the defendant's works entirely disconnected and separate from that of the servants who were in charge of said locomotive and train; for, as we have seen, that allegation may be true, and yet they must be regarded under the law as fellow-servants. This allegation, however, may be treated as surplusage.

In some of the States it is held that, in order that a servant may recover damages from the master for injuries committed by a fellow-servant, the negligence of the master in selecting proper servants must be alleged in the declaration. Thus in 70 Me. 60, in the case of *Blake* v. *Railroad Co.*, we find that the court holds: "It is settled law that a master is not liable to a servant for an injury resulting from the negligence of a fellow-servant in the same general employment. * * * The negligence of the master in not selecting competent servants, being the basis of his liability, must be distinctly set forth in the declaration." So in *Summerhays* v. *Railway Co.*, 2 Colo. 484, it is held that " an employer is not liable to one in his service for injuries occasioned by the negligent act of another in the same service, unless the latter was incompetent, unskillful or habitually careless, and he had knowledge of the fact." See, also, *Tyson* v. *Railroad Co.*, 61 Ala. 554, and *Manufacturing Co.* v. *Millican*, 87 Ind. 87, where the same doctrine is held.

In our State, however, the ruling is different, and we find in the case of *Criswell* v. *Railway Co.*, 30 W. Va. 811 (6 S. E. Rep. 31) in which Thomas Waldron, an employe of the Pittsburgh, Cincinnati & St. Louis Railway Company was killed while traveling on a hand-car to a point where he was to work in repairing the defendant railroad, by the

neglect of the defendant in running a train of cars against said hand-car, four counts of the declaration were demurred to, and GREEN, J., in delivering the opinion of the Court, says: "The court overruled the demurrer to each of the four last counts of the declaration. No defects in these last four counts were pointed out by the defendant's counsel, and we see none. These counts did not state any one of the particular acts constituting the defendant's negligence, but only, in general terms, that it negligently ran its train of cars over the hand-car on which the plaintiff's intestate, its employe, was traveling lawfully, thereby causing his death; and none of them specifically stated that the plaintiff's intestate was not guilty of contributory negligence. In some of the States these omissions would have been held to be defects in these counts, but in this State it has been expressly decided that such omissions are not defects." See *Hawker* v. *Railroad Co.*, 15 W. Va. 645; *Snyder* v. *Railway Co.*, 11 W. Va. 14.

Following the ruling in these cases, we must hold that the court below acted properly in overruling the demurrer to the amended declaration, and each count thereof.

The action of the court below in overruling the defendant's objection to special replication No. 2, filed by plaintiff to the four special pleas aforesaid filed by the defendant, was erroneous. In said special replication it will be perceived he says he did not know, had no means of knowing, and was not informed by said McClung, the said defendant or any one for them, that he was waiving or relinquishing any right of action or claim for damages he then had against the defendant, in signing said receipt for twenty seven dollars; but that said McClung, as the agent of defendant, represented to him that said writing was merely a receipt for said sum of twenty seven dollars, and said writing was so translated to him by said agents, and that he signed said writing by mistake as to its purport, and that it was procured from him by the said defendant and its agents by said false, fraudulent, and deceitful representations and concealments as to the contents, meaning, and intent of said writing made to him by defendant and its agents. Said special replication, however, does not allege

that the plaintiff believed the representations made to him as aforesaid by the defendant and its agent, and this we regard as a material and necessary averment which has been omitted from said special replication, and for that reason the same must be regarded as insufficient.    See *Pennybacker* v. *Laidley*, 33 W. Va. 624 (11 S. E. Rep. 39) where it is held that "one of the fundamental principles in regard to fraudulent misrepresentations is that the false statement must be believed by the party to whom addressed, otherwise, however false or however fraudulent the intent, the false statement does not constitute any ground for rescission of a contract;" and, the plaintiff having withdrawn his general replication to said pleas, the special replication being insufficient, they would stand unreplied to, and the case would stand upon the plea of "not guilty," and issue thereon, and said special pleas unreplied to.

As to the third assignment of error, that there was error in swearing the jury to try the issue when in fact a number of issues had been made, there seems to have been no objection to the manner in which the jury were sworn in the court below, and this Court will presume that the proper oath was administered to them.    It is not the practice to record the oath, administered by the clerk to the jury, and, in the absence of objection, it will be held sufficient, although the record discloses that the jury were sworn to try the issue joined when there are two issues.    This question was raised in the case of *Baylor* v. *Railroad Co.*, 9 W. Va. 270, in which it was held that, "when there are two issues joined in an action on two several pleas, and the jury is sworn to try the issue, but they find a verdict responsive to both issues, the misprision of charging the jury to try the issue is immaterial."

The fourth error assigned and relied upon by the defendant is that the court offered the plaintiff an election as to the amount of the verdict or judgment, and in inquiring before rendering its judgment whether the plaintiff was satisfied to take the amount proposed, to wit, three thousand five hundred dollars, instead of seven thousand dollars, the amount found by the jury, and, the plaintiff having elected to take three thousand five hundred dollars in re-

fusing to set aside the verdict. This question was before this Court in the case of *Vinal* v. *Core*, 18 W. Va. 1. GREEN, J., in delivering the opinion of the Court speaking of this practice, says: "There has been in such cases some diversity of practice in the different states. The correct rule on this subject is, I think, laid down in *Nudd* v. *Wells*, 11 Wis. 415. The court in that case says: 'It is evident that the jury in this case found a verdict much larger than the plaintiff was entitled to by any legal rule of damages; but if the excess was clearly ascertainable, and the proper amount of damages might be readily fixed by the application of a settled rule of law to the evidence, perhaps the practice adopted by the court below of allowing the plaintiff to remit the excess, and then refusing a new trial, would be proper. The practice of remitting, when the illegal part is clearly distinguishable from the rest, and may be ascertained by the court without assuming the functions of the jury and substituting its judgment for theirs, is well settled. Thus, when a verdict allows interest when it exceeds the amount claimed, or in any other case, when that which ought not to stand is clearly ascertained, the remittal may be allowed. But it ought not to be carried so far as to allow the court, when the jury has obviously mistaken the law or the evidence, and rendered a verdict which ought not to stand, to substitute its own judgment for theirs, and, after determining upon the evidence what amount ought to be allowed, permit the plaintiff to remit the excess, and then refuse a new trial. There are authorities that would sustain even this, as *Collins* v. *Railroad Co.*, 12 Barb. 492, and *Clapp* v. *Railroad Co.*, 19 Barb. 461. But we are unable to see how such a practice can be sustained in such cases as these were, without doing the very thing which they propose not to do, that is, allow the court to substitute its own verdict for a wrong verdict of the jury, and, on the plaintiff's accepting that, refusing a new trial.'"

* * * * * In some States the court of appeals have gone so far as to reverse cases of this description, unless the plaintiff in the court below would accept, in lieu of the judgment rendered below, an amount apparently fixed arbitrarily by the court of appeals, and on his so doing the

judgment has been affirmed. But these decisions seem to me to be obviously not in accord with the practice both in this State and in Virginia to avoid most carefully the encroachment by the court on the province of the jury. As touching this subject, see *McRae* v. *Woods*, 2 Wash. (Va.) 80. The Court in *Nudd* v. *Wells*, 11 Wis. 415, above quoted, lays down the principle much more in accord with the general views of the courts of Virginia and West Virginia. I am therefore of opinion that the Circuit Court in no suit for a malicious prosecution, if it deem the damages awarded by the jury were so enormous as to furnish evidence of prejudice, partiality, passion, or corruption on the part of the jury, should refuse to grant a new trial if the plaintiff would remit so much of the verdict as in the opinion of the court exceeded what was just. If the damages assessed by the jury were so enormous as to furnish such evidence of impropriety on the part of the jury, the defendant is entitled to have the verdict set aside, and can not be compelled, in lieu of the verdict of a new and fair jury, to accept the judgment of the court."

Following the ruling in this decision, we can but conclude that the court below committed an error in allowing the plaintiff to elect to take a less sum than that found by the verdict of the jury, and rendering a judgment for said less amount, when there were no *data* before the court by which said smaller amount could be ascertained, but which was fixed, so far as appears, arbitrarily by the court. Instead of so doing the court should have set aside the verdict, and awarded a new trial.

What has been said might conclude this case, but, as the case may go again before a jury upon different pleadings, it is perhaps necessary to indicate our opinion in regard to some other questions raised during the trial. The court erred in giving the instructions asked for by the plaintiff which are hereinbefore set forth, because they were not based upon any evidence in the cause tending to show that the defendant was negligent in providing reasonable rules and regulations governing the men working at the point where the plaintiff was injured, or that it did not provide such rules and regulations governing the engineers, engines,

and those running them, in approaching the point afore-said, and the instruction for this reason was calculated to mislead the jury. That portion of the instruction in reference to the release obtained from plaintiff by false representations has been disposed of by what has been said in reference to the special replication, and what is therein said in regard to the amount of damages the plaintiff was entitled to recover has been disposed of in passing upon the action of the court in refusing to exclude the evidence of plaintiff.

I can see no error in the instructions Nos. 2 and 11 asked for by the defendant, nor in said instructions Nos. 2 and 11 as modified by the court, unless the concluding words of the first instruction, "about the same business," might be understood to confine the risk which the employe assumes to persons engaged in the same department; for, as we have heretofore stated, the master is not liable for damages to a servant occasioned by the negligence of a fellow-servant, although he may not be in the same department, unless it is properly pleaded and proven that the master was negligent in the selection of the servant who was the cause of the injury, and by reason of such negligence in the master such incompetent or negligent servant was employed. As we have seen, the engineer, who was in charge of the engine and of the train that caused the injury to the plaintiff, was his fellow-servant, and by the finding of the jury, in response to the fourth interrogatory propounded to them, the negligence of the said engineer was the sole cause of the plaintiff's injury.

We must conclude, therefore, under the authorities above quoted in reference to injuries received by one servant from his fellow-servant, that the defendant was not liable to damages for the injury complained of. For these reasons the judgment should be reversed, the verdict set aside, and the case remanded to the Circuit Court of Ohio county for further proceedings to be had therein, and the defendant in error must pay the costs of this writ of error.

LUCAS, P., concurred in syllabus and conclusion, but dissented from so much of the opinion as does not relate to the point stated in the syllabus.

REVERSED. REMANDED.