### *Lake Shore & M. S. Ry. Co. v. George Fisher.

1. SWITCH STAFF LOCATED NEAR RAILROAD TRACKS, NEGLIGENCE, WHEN.

It is actionable negligence for a railroad company to maintain along its right of way a switch staff so constructed and arranged that when the iron flange is turned to stand perpendicular to passing cars the edge thereof will come within such close proximity to such cars as to endanger the lives and limbs of employes in getting on and off the cars at places along their sides which have been provided for such purpose and where they are expected to get on and off, where such employes have no knowledge of its location or danger and have not been warned to look out for it.

2. INEXPERIENCED BRAKEMAN NOT CHARGED WITH DANGEROUS OBSTRUCTIONS ALONG TRACK.

A brakeman on a railroad train inexperienced in railroading, who is making his first trip over the road has no actual knowledge of the location of switch staffs along the right of way which would endanger the lives and limbs of employes getting on and off cars at the places provided for such purposes, and who has not been warned by the company of the dangerous situation or of other obstructions along the track except a general instruction to look out for overhead bridges, switch standards, etc., when making couplings, cannot be charged with the duty of knowing of dangerous obstructions along the line, nor does he assume the risks of being struck and injured by the iron flange on a switch staff located along the track and so close thereto as to strike an employe of a passing train getting on a car at the place provided for such purpose.

3. No ABSOLUTE DUTY ON BRAKEMAN TO LOOK FOR DANGER AT ALL TIMES.

While it is the duty of a railroad brakeman to be cautious and careful while engaged in the performance of his duties, yet no absolute duty is enjoined upon him to look in any particular direction under all circumstances, or to watch for a particular danger, but whether he must do so or not depends upon all the circumstances of the particular case, his knowledge of the existing danger, the warning given him in reference thereto, and the particular situation in which he may be placed at the time.

ERROR to court of common pleas of Lucas county.

**Emory D. Potter, Jr.,** for plaintiff in error.
**Hurd & Scribner,** for defendant in error.

### BENTLEY, J.

This cause is in this court upon a petition in error to reverse the judgment of the court of common pleas upon a verdict rendered in favor of Mr. Fisher and against the railroad company, for personal injuries received by Mr. Fisher while in the employ of the railroad company as a brakeman, at Rockport, near Cleveland.

Mr. Fisher was a young man of thirty-one years of age, residing

---

*Affirmed without report, Railway Co. v. Fisher, 51 Ohio St. 574.

in Ottawa county, and was a farmer. He never had been in the employ of any railroad company before, nor done any railroad business until January 17, 1890. At that time for some reason he seems to have left his farming occupations, and applied to the Lake Shore company for employment as a brakeman. He was employed by the company, and went to a place rejoicing in the name of "Whiskey Island," near Cleveland, to begin his employment for the railroad company—perhaps to get a good start. He got there, I believe, on January 18.

In doing some work his train passed through this town of Rockport; that seems to have been in the evening when he was there; and leaving Rockport in the night, or evening, he came west with his train on that day, the train being bound for Toledo. For some reason he left the train at LaCarne, and the train pulled out and left him there.

The circumstances are not detailed as to how that happened, only as it may be gathered from various statements in the record as to how it might have happened. He went home from LaCarne, and on January 20 started back to Cleveland on a freight train, and arrived at Rockport in the evening of January 20.

In the train upon which he was acting as head brakeman were a half dozen cars of stone, which were to be left at Rockport, or at least switched there; and the engine, after the cars had been properly uncoupled, backed these cars of stone upon the side track, and while it is not exceedingly clear from the testimony, it would seem that this young man rode the cars on that switch and the brakeman stopped them.

He says it was dark, and he did not know whether there were any other cars on the switch or not, but fearing there might have been he had to be very cautious lest it might collide and knock him off and injure him. But he performed his duties upon these cars, and by the time he was ready to get off of them his train started to pull out of the station, or the place where it then was; and one of the employes upon the train, seeing him upon the ground and his train starting, told him to hurry up and get on or he would be left again.

Thereupon he ran to the train, came up to a box car at the side of which was an iron stirrup projecting below the car, as is usual, and, having his lantern upon his arm, he grabbed at the armhold and put his right foot in the stirrup. The train was bound for the east, and he was upon the north side of the train, and he approached one of the corners of the box car. The manner in which he attempted to get on, with his foot in that stirrup, would afford some light on the degree of experience and sense he had in getting onto the freight car. The iron ladder of the car provided for brakemen to mount to the roof, was

adjusted around the corner on the hind end of the box car, in the usual manner, and instead of putting his left foot in the stirrup, with his hand hold of the handhold, and springing around to the ladder, either from excitement or greenness, or in some way, it seems he caught or put his right foot there. The cars at that time were pulling out and were going perhaps three or four miles an hour at that time, and it being a down grade their speed was constantly and noticeably increasing.

At the place where he attempted to board this car in the manner indicated—or rather ahead of this place from 100 to 150 feet—there was a switch staff standing between the double tracks. Upon this upright switch staff was an iron flange, and above that and sitting upon the top of the staff was a lantern provided with green lights. The flange and the staff and the lantern came up higher than the lower corner of the box car. The switch staff was so arranged and placed there that when the flange was turned so that it should stand perpendicular to the cars that were passing along there, the edge of the flange would come somewhere from fifteen to twenty inches from the side of a box car.

Some persons saw Mr. Fisher as he caught onto the side of the car in that way. And instead of swinging immediately around to get upon the ladder at the rear of the car, he seems to have hung there at the side of the car, almost at arm's length, for some reasons, with his lantern upon his arm. In the meantime his car was rapidly approaching this switch light, and two or three persons, appreciating his danger, hollered at him and warned him of the danger which they saw he was approaching. Mr. Fisher either did not hear the warnings given, or seems not to have understood them; at least he did not change his position until after the car had arrived at this switch staff and he was struck and knocked off the car, and run over, and injured.

Under circumstances of that kind the jury awarded him a verdict against the defendant railway company. It being charged that the company was negligent in thus placing the switch staff so near the passage of these cars as to endanger their employes, and that from that negligence the plaintiff below was injured.

It was claimed upon the part of the company that it was proper and necessary to place a switch staff in that position, and that it was usual along the line of the road; that the young man was warned when he entered the employment of the company to look out for switch staffs, among other things, and to generally look out for danger; that if he had looked ahead when he mounted this car he could have seen this green light and the switch staff, and would have escaped the danger,

either by dropping off the car, not mounting it at all, or getting on at the other side; and that he was negligent in not paying any attention to the warning that he received, and that therefore he ought not to be allowed to recover damages against the company.

The testimony, as I have indicated, shows that this young man Fisher had no prior experience in railroading prior to this experience beginning on January 17. We should gather from the record and all the testimony that he was perhaps what is ordinarily termed "green," perhaps more so than usual.

The defendant in error in the hearing before us, cited to us a great number of cases showing that courts in other states had sustained verdicts against a railroad company under similar circumstances; cases that hold that it was negligence for the railroad company to allow a structure to be placed so near the passage of the cars as to endanger their employes in getting on or off the cars at places provided for their getting on and off, and where it was expected they would get on and off—many cases that hold that it is not necessarily one of the perils which the employe of a railroad company assumes when he enters the employment of the railroad company.

On the other hand, counsel for the railroad company cited quite a large number of cases where it has been held that under the circumstances presented in those cases the employe could not lawfully recover.

We have taken the pains to look up and consider all the cases thus cited by counsel for the railroad company, to see whether the cases therein considered were such as the one here at bar. I will very briefly indicate what we found the nature of those cases thus presented, to be. DeForest v. Jewett, 88 N. Y. 264, was a case where there were open ditches, plain and easily to be seen, along the railroad so that the employe could see them, and he had been employed some time; the court found that they were such structures and dangers that he either actually knew of them or were such as he was bound to know from the employment that he had had around them.

In 99 Pa. St. is a case where there existed a coke bridge for wheeling over coke, and was made to extend over the railroad; and the employe in that case was riding on the top of a car and was struck by this bridge and injured. The court found in that case that from the number of times that he had passed there in his employment upon the train, he must be chargeable with knowledge or at least with notice of the bridge, and that he could not pass it in safety.

In 50 Mo. is a case which was also in regard to an overhead bridge. The court found from the record that the employe had worked there

before, and under such circumstances he was chargeable with knowledge of the situation of the bridge and of its dangerous character.

Gibson v. Railway Co. 63 N. Y. 449 [20 Am. Rep. 552], is a case of the depot extending over so that a brakeman could not stand upright upon the top of a freight car, in the middle of it, and not be injured. And the court found from the situation there, and the knowledge of the employe, that he himself was negligent in assuming the position he did at the time the car passed under the roof, or so near the roof of the depot.

Wells v. Railway Co. 56 Iowa 520 [9 N. W. Rep. 364], is also a case of an overhead bridge, and this had been known to the plaintiff for many years prior to the accident of which he complained.

Smith v. Richards, 155 Mass. 79 [28 N. E. Rep. 1132], is a case of an engineer leaning far out from his engine for the purpose of observing the track or watching for signals, and there was a signal post so near that as the engine passed it, it struck him and injured him. The court in that case recite the fact, however, that along the line of his run there were quite a number of such obstructions so near the track, and that while perhaps it was not certain that he had actual personal knowledge of this particular post, yet he had knowledge of many such obstructions, presenting such dangers, and from his experience with those he was chargeable with notice that he might expect it from this post, and therefore he was negligent in not providing for his own safety in passing it.

Rains v. Railway Co. 71 Mo. 164 [36 Am. Rep. 459], is also a case of an overhead bridge, and the court recites that the record shows that the person had passed under it, to and fro, a great many times, and that under such circumstances he must have known about it.

Clark v. Railway Co. 28 Minn. 128 [9 N. W. Rep. 581], is a case where an elevator roof projecting in such a way as to hit a person riding along upon the cars of a railroad company. There it appeared that the plaintiff knew it would strike any person standing upon a car as he was standing, and that although the railroad company might have been negligent in building or allowing the elevator roof to be used in such a manner, yet in the particular case the man himself who was injured was chargeable with negligence.

In 39 Iowa, also cited, was a case where a brakeman coupled cars when they were going too fast. He was warned just before that, of the danger in so doing. He had knowledge of the situation of certain bumpers on the cars, and in spite of the warning given him then and there, and in spite of his knowledge of the situation of the bumpers and

that they might not hit each other sufficiently to stop the cars coming together, he undertook to couple them; and the court held that he was chargeable with notice, under such circumstances, that the one might override the other and be dangerous for him to attempt to couple them under such circumstances.

In fact all these cases cited by counsel for the railroad company are cases where the court found that the injured employe either had actual knowledge or was chargeable with actual knowledge of the situation of these obstructions and of the danger attending the passing of them. It appears that the mere fact that such dangers are along the line of the road does not necessarily impose the risk upon the employe who takes employment from the company under such circumstances; that is, that the dangers arising from these things are not necessarily such dangers attending the employment generally as he assumes the risk of incumbering. It becomes in each individual case a matter of knowledge, or such circumstances as charge notice upon the injured employe.

So in this case we think the inquiry is narrowed down to this; whether this young man Fisher, under the circumstances in which he was placed (his experience and all that) had knowledge of such an obstruction, or whether he had knowledge of such facts and circumstances as would charge him with notice, and to forbid his recovering.

Now it is said that at the time he mounted this freight car he might have seen this switch light—he might have seen the switch light if he had looked ahead. But we think it does not clearly appear that if he had seen the switch light ahead that he would have instant knowledge of the distance between it and the car, when the car should reach it.

Consideration is also to be had of the situation under which he mounted the car. He was inexperienced; perhaps somewhat excited. He was told to hurry; he saw his train leaving, although he had been engaged in braking and switching the cars, as was his duty; and had completed that as soon as he could and started to take his train again; and yet in the meantime, without any reference to him, the train had started on and had already obtained a velocity of some four miles an hour. Under these circumstances his superior told him to hurry up, and get onto his train or he would be left again. He did hurry up, and grabbed this car handhold. He says that almost instantly, it seemed to him, he was struck by this switch staff and knocked off the car.

The testimony on that feature of the case shows that he might have been 100 to 150 feet away from it when he first took hold; and the train was going somewhat rapidly, and increasing in speed. It is not certain

that he did not have in his mind the danger to which he was exposed, and that while he might have heard some one shouting, it conveyed no distinct and definite warning to him as to what it was necessary for him to do in order to escape any injury. In this respect we think the case was fairly left to the jury to determine whether or not he was chargeable with knowledge and notice of the danger, and whether he was himself negligent, under the circumstances, in mounting the car and remaining where he was.

The manner in which he put his foot into the iron stirrup would necessarily have caused some delay, even if he knew the next movement he should make, and even if he knew the danger to which he would be exposed if he did not get around on the back end of the car; that is, by changing or swinging around and getting upon the ladder. The time that elapsed from the time he placed himself in that position till this switch staff was reached was very short at least, although the train may have run even 130 or 150 feet. It is a comparatively short time that would be required for it to reach the switch staff.

Now this being the first time that he had passed along there, as is shown by the evidence, and his inexperience and want of knowledge, we think the jury were fairly warranted in finding that he really did not know the position of that switch staff, and that it would be going too far to say that he knew such facts and circumstances as absolutely charge him with the duty of knowing it was there and was dangerous.

He says he had seen switch staffs between the tracks at Elyria, but so far as he had observed they were much lower than this one and did not present the same dangers.

In view of the record in the case, we would not feel at all justified in setting aside the verdict of the jury upon this ground—that they should have found that it was the duty of this young man to have known the situation there and should not have placed himself in a position of danger. It is said by the railroad company that it could not be charged with negligence in placing the switch staff there—that it was necessary to have it there. But however that might be in fact, the testimony in this record would not indicate that it was absolutely necessary that it should be so situated. We are unable to say from the testimony here, although the fact may be true, that it would not be entirely practicable for the tracks to be placed wider apart at that place, so that the switch staff could be placed further away from the cars. It is said that if it is placed at a different place it will necessitate a longer rod to work it, and therefore, additional danger to employes and persons passing there. This is the statement of one of the witnesses for the railroad company,

while there is no explanation of how he arrives at that, or why it would necessarily be dangerous to place the switch staff a little further from the track. If the rod was longer, it would seem that the jury might have come to the conclusion that it could be made a little heavier, and thus enable the switch staff to be operated to advantage a little farther off.

There is some testimony attempted to be produced on the part of the railroad company, that there were other switch staffs along the line of this road substantially like this one, and that therefore this young man was chargeable with notice that he might expect to find them anywhere along the line. Now this record does not indicate that this young man had passed any such switch staffs. There was some general statement that they used switch staffs somewhat of the general plan of this along the run of particular witnesses, who so testified, but there was no pointing out of any particular places where such a switch staff was placed, or that it occurred in or along the line where this young man had passed.

We do not mean to say, or hold, that as a matter of fact it is and must be dangerous for a railroad company to maintain a switch staff of this character this near to the track, or between two tracks, so that they come this near to passing cars. But from the record and the testimony presented in this particular, we fail to find that it was the duty of the jury to conclude that that was a necessary and proper place to maintain such a switch staff.

As to the warning the company claim the young man had at the time he took the employment, it is shown by a written statement introduced in evidence by agreement, as to what Mr. Fisher was told when he entered the employment of the company, the statement being substantially this; that he was a new man and was warned to look out for overhead bridges, switch standards, etc., in making couplings.

Now suppose a young man, without any knowledge in railroad matters, fresh from the farm where he had passed thirty-one years of life, and hiring out to the railroad company is told to look out for switch staffs. To him it would be scarcely any warning at all. If it were shown that he had been told, or knew the line of railroad where he had to run, and that there were switch staffs coming so near that if he should hang on the side of a car it would be apt to hit him, it would be a different matter; but the warning referred to would convey no adequate idea of the dangers to the young man.

As to the objection made to the charge of the court, and its refusal to charge, the railway company presented two requests to the court, the first being as follows:

Railway Co. v. Fisher.

"The plaintiff was in the defendant's employ as a brakeman on his freight trains, and as such was engaged in the performance of a service that was hazardous and perilous; and while so engaged in the performance of his duties as such, it was his duty to be careful and cautious himself, and on the watch and lookout for dangers; and if whilst so engaged he was negligent in the performance of his duties, and such negligence contributed to produce the injury, he cannot recover."

When the court came to consider this request this was said: "We have charged, as we think, the first request: If the plaintiff himself was negligent in the performance of his duty he cannot recover."

The only material difference, if it be material, between what the court did say and this request, is, that the court only said that it was his duty to be cautious, and that if the plaintiff himself was negligent in the performance of his duty he cannot recover; while the additional statement is made in the request, that he must be on the watch and lookout for dangers.

This matter was not specially argued before us, but it is presented in the record. We think that for all the substantial purposes of the case, the material part of this request was given. If there was any particular stress to be placed upon this, to look out for dangers, it would amount to nothing in this case except that the jury should understand that he was to look out for this particular danger. Whether he was to look out for this particular danger would depend upon his knowledge of the warning given him, and all the circumstances of the case and the other matters to which his attention must be directed; and was a matter for the jury to consider.

The second request is:

"If whilst engaged in his duties as a brakeman it became necessary for him as a part of his service to go upon the side of a car of a moving train, it was his duty to look ahead in the direction the car was moving, to see if there was any obstruction or danger ahead which might imperil him, and if he neglected so to do, and was injured in consequence of such neglect, he cannot recover."

Now it appears plain and direct in this record that he did not look ahead when he got onto this freight car, and if the court should have given this request it would have been equivalent to saying that the plaintiff below could not recover in this particular action, because he did not look ahead.

We think it cannot be said, as an absolute rule of law, that the plaintiff must look ahead, under all circumstances. It is his duty to be cautious and careful; but whether he must look ahead or behind,

or to one side, or down or up, depends upon the particular situation in which he may be placed at the time. And when he was riding upon that car in the position he then was, and perhaps a little "green," as I say, holding onto the outside of the freight car when the train was in rapid motion and gaining headway every minute, and he being somewhat perturbed, he could not exactly understand how he was going to get out of his peril, and before he could gather his wits to determine whether he should look at his feet, or around him and ahead of him, he may have been struck by this switch staff.

We think under such circumstances it would have been going too far for this court to say to the jury that it was absolutely his duty before he got upon the car to look ahead for danger.

With that view of the case we will not disturb the judgment below, and affirm the same, with a certificate that reasonable cause for these proceedings in error existed and no penalty will attach.

**Scribner** and **Haynes, JJ.,** concur.